[PLEADING. PRACTICE.]

## PERKINS *against* HART, Executor of HART.

Where there is a special agreement open and subsisting at ·the time. the cause of action arises, a general *indebitatus assumpsit* cannot be maintained.

But, if the agreement has been wholly·performed, or if its further execution has been prevented by the act of the·defendant, or by the consent of both parties ; or, if the contract has been fully performed in respect to any one distinct subject included in it ; the plaintiff may recover upon a general *indebitatus assumpsit.*

A settled account is only *prima facie* evidence of its correctness, at law or in equity ; it may be impeached by proof of fraud, or omission, or mistake ; and if it be confined to particular items of account, concludes nothing as to other items not stated in it.

Where a case is certified to this Court upon a division of opinions of the Judges below, and the points reserved, upon which they were divided, are too imperfectly stated to enable this Court to pronounce any opinion upon them, this Court will neither award a *venire de novo,* nor certify any opinion to the Court below upon the points reserved, but will merely certify that they are too imperfectly stated.

THIS was an action of general *indebitatus assumpsit,* brought in the Circuit Court of Ohio, for work and labour, care and diligence, by the plaintiff done and bestowed, as an agent and·attorney, in exploring, showing, surveying, and selling, the lands of the defendant's testator ; also, in the searching of records, investigating titles, and in the payment of the taxes of the testator. The declaration contains the other general money counts. The plaintiff also filed what is styled an additional " bill of particulars,"

for exploring, giving information of the situation and value, superintending law suit with Granger, attending to division with Mather's heirs, and for general superintendence of Hart's landed interest in Ohio, (except for paying taxes,) 3,500 dollars.

By consent of the parties the jury found a verdict for the plaintiff of 4,308 dollars 70 cents damages, if, upon the points reserved, the Court should be of opinion that the law is for the plaintiff; but if, upon the points reserved, the Court should be of opinion that the law is for the defendant, then they find for the defendant.

The opinions of the Judges below be'ng opposed, the cause was removed to this Court upon a certificate of the disagreement, upon the three following points:

1. That the whole evidence, and Hart's (the testator's) letter of January 14, 1812; Perkins' (the plaintiff's) letter in reply, of February 10, 1812, and Hart's letter of March 9, 1812, in reply to Perkins, constitute a special agreement, investing Perkins with the agency of Hart's land in the State of Ohio, open and subsisting at the time the cause of action is claimed to have arisen, which precludes Perkins from recovering in this action.

2. That the whole evidence, and the letters above cited, constitute a special agreement, defining the nature and extent of Perkins' agency, and settling the subjects upon which he was to receive compensation, and the amount of that compensation; the legal operation of which

agreement is to preclude Perkins from claiming compensation for any thing done in the execution of his agency, except according to the terms of that agreement.

3. That the plaintiff cannot recover for the two items in the bill of particulars claimed and charged to have arisen as matters of account between the parties in 1814 and 1815; because, the plaintiff, on the 1st of February, 1815, and 19th March, 1819, exhibited and stated his general account against William Hart, upon each of which a balance was due from, and paid by, the said William, as a settlement upon an account stated, which precludes the plaintiff from recovering in this action for said two items, claimed to have been due before the said accounts were rendered.

In the letter of Hart (the defendant's testator) of the 14th of January, 1812, he requested the plaintiff to give him his most favourable terms of agency, to appoint sub-agents to transact the business where he (the plaintiff) might deem necessary, with such compensation as he might agree upon with them. The letter then proceeded as follows: " State the amount of commissions you shall expect me to pay on account of sales that shall be collected and remitted, but no commissions to be paid by me till the collections are made. Provided sales are made by me in exchange for lands, and if I should draw on you for the amount to be paid in lands at a price agreed on, or otherwise, if necessary, to be left with you to be ascertained; in such

case, what should you expect to charge on sales of that nature? Please be particular in stating your terms of agency, and make them as favourable as possible." In the plaintiff's letter, in reply, of February 10th, 1812, he says: "My commission on sales made by me, the money collected, and remitted, is eight per cent. When contracts are made, (as is sometimes the case,) purchasers make a payment, and then give up the land so as to be left, without encumbrance, to be sold again, 50 per cent. on such receipt. On these two items the commission cash, as it has been cash received. In case the agency should be closed, and a settlement made, and contracts remain on hand unsettled, then, in all those contracts that should be carried into effect, five per cent. commission, received in contracts, with a conveyance of the lands covered by the contract or contracts received. On sales made in exchange for lands, &c. three per cent. commissions, to be received either in contracts here, on lands here at retail price. Always, as far as is practicable, receive commissions in that which shall be similar to that in which it is charged." The letter from the defendant's testator dated the 9th of March, 1812, in reply to the plaintiff, acknowledges the receipt of the above letter, and then adds, " Your observations in regard to the mode of selling new lands, are, doubtless, sanctioned by experience, and I am happy to commit the agency of my property to your experience and good judgment, from whence I expect to derive peculiar advantage."

The cause was argued in this Court by Mr. *Wright* and Mr. *Whittlesey*, for the plaintiff, and by Mr. *Webster* and Mr. *Hammond*, for the defendant.

On the part of the plaintiff it was argued, (1.) That where a special parol contract, or a written contract not under seal, has been entered into, the party may still recover on the common counts in a general *indebitatus assumpsit.*[a] In the case of the *Bank of Columbia* v. *Patterson,*[b] it was held to be incontrovertibly settled, that *indebitatus assumpsit* will lie to recover the stipulated price due on a special contract, not under seal, where the contract has been completely executed; and that, in such case, it is not necessary to declare upon a special agreement. So, where a beneficial service has been rendered to the defendant, under the special agreement, but not in pursuance of its terms, the plaintiff may recover upon a *quantum meruit.*[c] Or where the defendant is the occasion of its non-performance; or where the contract has been rescinded by the parties, or put an end to by the defendant.[d] Or where the defendant, by his own act, defeats the performance.[e] And where the plain-

a 1 *Chitty's Pl.* 333. and authorities there cited.
b 7 *Cranch's Rep.* 303.
c *Bull. N. P.* 139. 7 *Johns. Rep.* 132.
d 10 *Johns. Rep.* 37. 7 *Term Rep.* 181. 1 *N. R.* 357.
e 12 *Johns. Rep.* 274. 5 *Johns. Rep.* 87. 7 *Johns. Rep.* 132.
2 *Mass. Rep.* 415. *Powell on Contr.* 417.

tiff seeks to recover on a special contract, and the evidence offered will support a common count, supposing no special agreement, he may recover under the latter.[a]

2. The correspondence between the parties, and the other evidence in the cause, did not constitute an outstanding special agreement, such as to preclude the plaintiff from recovering in this form of action.[b]

3. The account stated did not specifically include the items stated in the bill of particulars. But a settled account, or a receipt, is only *prima facie* evidence, which the plaintiff may rebut by showing the true state of the accounts.[c]

On the part of the defendant, the counsel entered into a critical examination of the authorities cited on the other side to support the position, that a general *indebitatus assumpsit* would lie in the present case ; and although it was admitted, that the precedents were to that effect, yet it was denied that they rested on any solid or consistent ground of principle ; it was asserted that they had been settled without proper examination, and a due consideration of the general analogies of the law, and were calculated to

---

*a* 1 *N. R.* 351.   *Bull. N P.* 139.   *Dougl. Rep.* 651.   5 *Mass. Rep.* 39. 391.   1 *Mass. Rep.* 355.   7 *Johns. Rep.* 134.   10 *Johns. Rep.* 37.

*b* 3 *Johns. Rep.* 199.

*c* 1 *Johns. Cas.* 145.   5 *Johns. Rep.* 72.   5 *Ves. Rep.* 87.   14 *Johns. Rep.* 212.   12 *Johns. Rep.* 531.   2 *Term Rep.* 366.   5 *East's Rep.* 230.   4 *Johns. Rep.* 377.

introduce uncertainty and confusion into legal proceedings, and to encourage negligence in making contracts, and infidelity in performing them.   But, it was further insisted, that those authorities, even supposing them to have irrevocably settled the practice, could not be applied to the present case.   Here, the contract specially defined the terms upon which it was to be performed by both parties, and, also, the terms upon which it was to be closed.   In all the cases cited, the right of action was held to accrue upon the termination of the contract.   While it subsisted, it could not be pretended, that a general *indebitatus assumpsit* could be maintained.   It had, indeed, been said, that the contract was terminated by the death of the testator, and the act of his executor.   But no case had gone so far as to decide, that an agent, whose authority terminates upon the death of his principal, may proceed against his personal representatives upon the contract of agency, as if it had been terminated by some wrongful act of the principal.   The authority of the agent terminates with the death of the principal, but for services performed under the agency, the contract remains open.

2.   The agreement precluded the plaintiff from claiming compensation for any thing done in execution of his agency, except according to the terms of that agreement.   The case cited to show the contrary does not apply.[a]   Here, whatever services the plaintiff performed before 1812,

1826.

Perkins
v.
Hart.

[a] Jacobson v. Le Grange, 3 *Johns. Rep.* 199.

in expectation of being compensated by the agency, must be considered as satisfied by the contract of agency then made. That contract must be regarded as embracing all services performed, or to be performed, by the plaintiff, for the defendant's testator, in respect to the sale of lands. If the disputed items of account arose under the contract, they could only be recovered in a special assumpsit grounded upon the contract. If they were claimed, independent of the contract, as not being within its terms, it was insisted, that the plaintiff could set up no claim to compensation for services in the agency not embraced by the contract, which settled and defined the rights of the parties.

3. The question presented by the last point reserved, was, whether the plaintiff, having presented two annual accounts of his agency, embracing items of debit and credit arising under his general agency, and arising also under his special agency in the sale of lands, having stated the balance due to him upon these accounts, and received payment, could recover in a general *indebitatus assumpsit* for other items of account due at the time the former were exhibited, without offering any evidence of error or omission. The plea of account stated, and payment of the balance found due, is a bar to the action of assumpsit.[a] If it be a bar, it must be an absolute bar at law, and not a mere presumption, which may be rebutted by contrary evidence. The account can only be opened, surcharged,

a *Com. Dig. Pleader*, (2 G. 11.)

or falsified, in equity. All the authorities referred to in the principal case cited from the New-York reports,[a] are from the decisions in equity; but it does not follow, that a Court of law, not having the same means of doing justice between the parties, will pursue the same practice. At all events, in order to permit an account to be opened, there must be evidence of mistake or fraud.[b] There was neither in this case.

Mr. Justice WASHINGTON delivered the opinion of the Court, and, after stating the case, proceeded as follows:

The first point reserved in the Court below, and on which the Judges of that Court were divided in opinion, consists of two propositions: 1. That, upon the whole evidence, the three letters particularly referred to constitute a special agreement investing the plaintiff with the agency of Hart's lands in Ohio; 2. That this special agreement was open and subsisting at the time the cause of action is claimed to have arisen, which precludes the plaintiff from recovering in this action.

It is not easy to understand what the defendant's counsel mean by the whole evidence. Upon examining the voluminous record sent up to this Court, we find, that an active corresponde ace was carried on between Perkins and Hart from the year 1803 to 1816, upon the subject of Hart's

1826.
Perkins
v.
Hart.

*March 2d.*

Propositions involved in the first point.

Distinction as to the parts of the evidence to be construed by the Court, or to be submitted to the jury.

a Manhattan Company v. Lydig, 4 Johns. Rep. 377.
b 2 Atk. Rep. 119. 4 Johns. Rep. 387.

lands in Ohio, the payment of the accruing taxes on them, examining, surveying, and preparing them for sale, and of other services to be performed by Perkins, in some way or other connected with those lands. If this be the evidence alluded to, there was no objection to submitting it to the Court, to say whether the whole of this written evidence, or any part of it, created a special contract, investing Perkins with the agency of Hart's land.

But we find in this record evidence of a different character, such as accounts, receipts, and depositions, in relation to Perkins' agency e-specting Hart's lands in Ohio. If this was intended to constitute a part of the whole evidence upon which the question of law was to arise, we should be of opinion, that it was fit only for the decision of the jury, and ought not to have been submitted to the Court.

Defective state of the record.    The disinclination which this Court has always evinced, to send parties back to the Court below, if, by any reasonable construction, obscure parts of the record can be explained, disposes us in the present instance to consider the verdict as referring to the written evidence, not only because it would have been improper to call upon the Court to decide upon the effect of parol evidence, but because that which is spread upon this record has no apparent relevancy to the question of law which is submitted.

In the examination of the question whether there was a special agreement or not, we shall confine ourselves entirely to the three specified

letters, because, we are of opinion, after an attentive perusal of all the others, that they furnish not the slightest ground for saying that any agreement was entered into which invested Perkins with the agency of Hart's lands. The letters addressed by Hart to Perkins, treat him as an agent empowered to perform a variety of acts in relation to the lands of the former. But it was a limited agency, created for particular purposes, and as occasions required, but founded upon no special agreement which bound Perkins to perform any specified duties, or Hart to remunerate the services he might perform, otherwise than the law bound him upon the principle of a *quantum meruit.* The particular agency which the former was requested, from time to time, to assume, was to pay taxes, attend to law suits, examine the lands so as to enable Hart to judge of their value, and to have certain lots and townships surveyed, as preparatory to a sale of them at a future period. The taxes were annually paid, and other advances made by Perkins, upon which he charged both a commission and interest, and these, it would seem, were punctually reimbursed when drawn for, although the charge of interest was sometimes complained of.

The preparatory steps for bringing these lands, or certain portions of them, into the market, having been taken, the correspondence commenced, which is particularly referred to in the first and second reserved points.

In Hart's letter of the 14th of January, 1812, he requests Perkins to give him his most favour-

1826.

Perkins
v.
Hart.

The question whether there was a special agreement, confined to the three letters specified in the first point.

able terms of agency, to appoint sub-agents to do business where he, Perkins, might judge necessary, with such compensation as he might agree upon with them. The letter then proceeds as follows : " State the amount of commissions you shall expect me to pay on amount of sales that shall be collected and remitted, but no commissions to be paid by me till the collections are made. Provided sales are made by me in exchange for lands, and if I should draw on you for the amount to be paid in lands at a price agreed on, or otherwise, if necessary, to be left with you to be ascertained, in such case what should you expect to charge on sales of that nature ? Please be particular in stating your terms of agency, and make them as favourable as possible."

In answer to this letter, Perkins writes, on the 10th of February, 1812, as follows : " My commission on sales made by me, the money collected and remitted, is eight per cent. When contracts are made, (as is sometimes the case,) purchasers make a payment, and then give up the land so as to be left without encumbrance to be sold again, 50 per cent. on such receipt. On these two items the commission cash, as it has been cash received. In case the agency should be closed, and a settlement made, and contracts remain on hand unsettled, then, in all those contracts that should be carried into effect, five per cent. commission, received in contracts, with a conveyance of the lands covered by the contract or contracts received. On sales made in ex-

change for lands, &c. three per cent. commission, to be received either in contracts here, or lands here, at retail price. Always, as far as practicable, receive commissions in that which shall be similar to that in which it is charged."

The letter from Hart to Perkins, dated the 9th of March in the same year, acknowledges the receipt of the above letter, and then adds, " Your observations in regard to the mode of selling new lands, are, doubtless, sanctioned by experience, and I am happy to commit the agency of my property to your experience and good judgment, from whence I expect to derive peculiar advantage."

These letters, we think, constitute a special agreement upon the subject of commissions to be paid by Hart to Perkins, by way of compensation for his agency in the sale of lands. It is confined to that subject only. The first of these letters invites Perkins to state his most favourable terms of agency in the sale of Hart's lands. The answer contains those terms by stating the commissions which he should expect to receive upon sales made, and the amount collected and remitted ; upon sales made, and then abandoned by the purchaser after a partial payment of the purchase money; upon sales made, but the amount not collected before the agency should be closed; and, finally, upon sales made by way of exchange for other property. The acceptance of these terms is sufficiently expressed in Hart's reply to this letter, by which he commits

*Margin notes:*

1826.

Perkins
v.
Hart.

The letters constituted a special agreement upon the subject of commissions only.

1826.

Perkins
v.
Hart.

to Perkins the agency of his property, the nature of which agency is too clearly explained by reference to the two preceding letters, to leave the slightest doubt as to the meaning and extent of the contract which was thus entered into.

Question whether this special agreement was open and subsisting at the time the alleged cause of action arose.

The second proposition is, " That this special agreement was open and subsisting at the time the cause of action is supposed 'to have arisen." Now, this proposition involves a mixed question of law and fact. If the contract was open, and the action was founded on that contract, then the legal consequence insisted upon, " that Perkins cannot recover in this action," undeniably follows. But whether, in point of fact, it was open when the cause of action is claimed to have arisen, that is, in the lifetime of W. Hart, must depend upon the evidence in the cause, of which the jury were alone competent to judge. If the agreement was wholly performed by the plaintiff during the lifetime of Hart ; if its farther execution was put an end to, before its completion, by the act of Hart, or by the agreement of both parties, then the plaintiff was not precluded from recovering in this action. Nay, further, if the contract was fully performed in relation to any one subject covered by it ; as, for example, by the sale, collection, and remittance of the purchase money for any one township or parcel of land, the plaintiff might well maintain an action o. *indebitatus assumpsit* for his stipulated compensation, in cash, on that transaction, and was not bound to wait until all the lands to which his agency extended were disposed of. Where the

agreement embraces a number of distinct subjects which admit of being separately executed and closed, it must be taken distributively, each subject being considered as forming the matter of a separate agreement after it is so closed. If, for instance, the agreement between a merchant and his factor be, that the latter shall sell and remit the proceeds of all cargoes which the former shall consign to him upon a stipulated commission, it can hardly be contended, that the factor cannot recover his commissions in this form of action, upon the proceeds of a single cargo which have been remitted, while there remain other cargoes yet undisposed of.

But, whether this agreement was wholly closed, or whether any one or more of its parts were closed, in either of the ways abovementioned, or in any other way, was a fact resting altogether upon the evidence, whether written or parol, which was, or might be, laid before the jury. It belonged exclusively to that body to say whether the fact existed or not; and, upon the fact so found, the question of law would fairly arise. In this respect, therefore, we are of opinion, that the verdict is clearly defective, and ought to have been set aside by the Court below.

It may not be amiss to add, that if the question reserved were, whether the agreement was open and subsisting *at the time this action was brought*, we should be of opinion, that the agency of Perkins having terminated by the death of Mr. Hart, the further execution of the agreement was put an end to by that event, and that, consequently,

it was not open when the action was brought. But the proposition is so stated as to refer to a period antecedent to the death of Hart.

The second point reserved is thus expressed. " That, upon the whole evidence, Hart's letter of January 14th, 1812," and so referring to the other two letters as in the first point, "constitute a special agreement, defining the nature and extent of Perkins' agency, and settling the subjects upon which he was to receive compensation, and the amount of that compensation, the legal operation of which agreement is to preclude Perkins from claiming compensation for any thing done in the execution of his agency, except according to the terms of that agreement."

The legal operation of. the special agreement, as far as it extended, precluded the plaintiff from claiming any compensation, not consistent with its terms.

It has been already stated, that the three letters particularly referred to in this point, did constitute a special agreement upon the subject of commissions to be paid to Perkins by way of compensation for his agency in the sale of Hart's lands. And, it may be added, that this agreement settles the subjects upon which Perkins was to receive compensation, and the amount of that compensation. If so, there can be no question but that the legal operation of this agreement, as to every claim founded upon it, is to preclude Perkins from recovering any compensation which is not consistent with the terms of that agreement. For, although in the cases before stated, in which the special agreement has been executed, or otherwise closed, a general *indebitatus assumpsit* may be maintained, it is, nevertheless, true, that the special agreement may

be given in evidence by the defendant for the purpose of lessening the quantum of damages to which the plaintiff is entitled.

But, after all this is admitted, the inference of law insisted upon by the defendant, that Perkins is precluded by the special agreement from claiming compensation for any thing done in the execution of his agency, except according to the terms of that agreement, does not follow.   The agreement is clearly prospective, and is confined to the single subject of commissions on the sale of lands.   This is apparent from Hart's letter of the 14th of January, 1812, which he prefaces by stating, that he had concluded to offer certain portions of his lands for sale at that time, and his other lands, when they should be partitioned. He desires Perkins, as his agent, to make the necessary previous arrangements, and to proceed in the sale of the portions before mentioned, and of No. 2. in the 13th range, as soon as the partition should be completed, and then he proceeds to inquire his terms of agency as before mentioned.   But, when we look into the whole evidence, to which we are referred by the point reserved, it is found that the agency of Perkins commenced as early as the year 1803, and extended to a variety of duties unconnected with that of selling land ; such as exploring the lands of his principal, having them surveyed, their quality and value ascertained, investigating titles, attending to law suits, paying taxes, and making other advances.

But the legal inference insisted on by the defendant does not follow.

Now, it is impossible to contend, with any

probability of success, that Perkins was pre-cluded by the special agreement from recovering, under the general counts, a compensation for those services, or, indeed, for any other services rendered by him in his character of agent, which are not strictly within the scope of the special agreement: But, the point raised here is, that he is precluded from claiming compensation for any thing done *in the execution of his agency,* except according to the terms of that agreement, although the services so rendered are not embraced by it.

*Obscurity of the record.* What was the nature of the particular claim submitted to the jury, upon which the parties consented that a verdict should be given for the plaintiff, the record does not enable this Court distinctly to decide. So far as any information is to be derived from the declaration, and the additional bill of particulars, it would rather seem as if it was for general services rendered by the plaintiff without the scope of the special agreement, that being confined, as before observed, to commissions on land sales.

If the paper found in this record, headed thus, " Perkins' account, on which the action is brought," which contains three items for commissions on as many sales of land, and three others for interest on those commissions, is to be considered as the original bill of particulars filed in the cause, it would seem to follow, that the action was brought to recover, as well those commissions as a compensation for general services not embraced by the special agreement.

Upon this state of the case, the conclusion of law insisted upon in this point would, nevertheless, be incorrect, for the reasons already stated.

It was contended by the counsel for the defendant, that this action would not lie in a case, where, by the agreement, the plaintiff was to be compensated in land. This is not controverted. But, it will be sufficient to observe, that it is not stated in the points reserved, or in the account just referred to, (if it be admitted to be the original bill of particulars,) that the commissions there charged arose upon an exchange of lands, or were to be discharged by land. The case is too imperfectly stated to enable this Court to say that it gives rise to the question to which the argument is directed.

The third and last point reserved is thus expressed : " That the plaintiff cannot recover for the two items in the bill of particulars claimed and charged to have arisen as matters of account between the parties in 1814 and 1815, because the plaintiff, on the 1st of February, 1815, and on the 19th of March, 1816, exhibited and stated his general account against William Hart, upon each of which a balance was due from, and paid by, the said William, as a settlement upon an account stated, which precludes the plaintiff from recovering in this action, for said two items claimed to have been due before the said accounts were rendered."

The difficulty of this point consists in the imperfect manner in which it is stated. The Court may conjecture, that the bill of particulars al-

*1826.*

*Perkins
v.
Hart.*

*Third point.*

*Imperfect manner in which this point is stated.*

luded to is the paper just referred to ; but whether it be so or not is by no means certain. If it be the bill intended, the difficulty still remains, as the *general account* is not stated, or referred to, so as to enable the Court to decide whether it does, or does not, include the two items which it is supposed cannot be recovered in this action.

If we look through this record in order to obtain information respecting this matter, we meet with two accounts containing charges for advances made by Perkins, in the years 1814 and 1815, for taxes due by Hart, and in discharge of other expenses connected with his agency, both which accounts were discharged. But it surely cannot be contended, that the settlement and discharge of an account for money lent and advanced for the use of the testator, is a bar to a claim for commissions, or of any other demand not included in the settled account. If, to a bill for an account, the defendant plead, or, in his answer rely, upon a settled account, the plaintiff may surcharge, by alleging and proving omissions in the account, or may falsify, by showing errors in some of the items stated in it.

The rule is the same in principle at law ; a settled account is only *prima facie* evidence of its correctness. It may be impeached by proof of unfairness, or mistake, in law, or in fact ; and if it be confined to particular items of account, it concludes nothing in relation to other items not stated in it.

*The stated account no bar.*

The legal conclusion, therefore, insisted upon by the defendant, that the plaintiff is precluded from recovering in this action for the two items claimed to have been due before the two accounts spoken of were rendered, is not correctly drawn, unless it appeared, from the point reserved, that those two items were included in what is styled the account stated.

It may further be remarked, that even if it appeared that the plaintiff was precluded by the settlement and discharge from recovering the amount of the two items referred to, it would not follow that the law is for the defendant upon the whole verdict, although it might be sufficient to induce the Court below to grant a new trial, if it had been applied for, upon the ground that the verdict was for too much.

Were this cause before the Court upon a writ of error, the imperfections in the points reserved which have been noticed, would render it proper to reverse the judgment, and to direct a *venire de novo* to be awarded. Being an adjourned case, it would be improper for this Court to give any such direction to the Court below.

CERTIFICATE. This cause came on to be argued on the certificate of division in opinion of the Judges of the Circuit Court for the District of Ohio. On consideration whereof, this Court is of opinion, that the points reserved, upon which the opinions of the Judges of that Court were opposed, are too imperfectly stated to enable this Court to pronounce any opinion upon them.