## SANBORN *vs.* EMERSON.

The creditors of A. having caused his property to be attached on sundry writs against him, B. gave his receipt to the officer who made the attachment; and, afterwards, at the request of A., and upon his express agreement to indemnify B., and to hold him harmless of his said receipt, B. returned the property to A., who afterwards appropriated and converted all the same to his own use. Judgments were recovered in the several suits against A., and executions issued thereon, and were placed in the hands of the officer who made the attachment upon the writs ; and he, within thirty days after the rendition of the judgments, demanded the property of B. After the return day of the executions, the same, together with the receipt of the plaintiff, still remaining in the hands of the officer, and B. being required so to do, paid to the officer the debt and cost of the several executions, and interest thereon, and the officer's fees. B. afterwards brought an action against A. for money paid, laid out and expended to his use.

*Held,* that the action was well brought; that the express contract of indemnity containing nothing more than the law would imply, it was optional with the plaintiff to declare in general *indebitatus assumpsit* for the money paid, or upon the special contract.

*Held,* also, that the payment was well made to the officer; that his authority to receive payment and to discharge the executions against A. continued so long, at least, as he had the rightful custody of them, and had also under his control the means of satisfying the executions; and was himself liable for the proper application of those means, notwithstanding the executions were not in force for the purpose of the seizure and sale of property; and that the payment thus made by B., whose liability upon the receipt had become fixed by the demand, is to be regarded as having been made to the use of A., and at his request.

*Held,* also, that where an officer has attached, upon a writ, personal property sufficient to satisfy the claim of the creditor, and the costs which may accrue; and judgment being recovered therein, and the execution issued therein being seasonably placed in his hands, he fails to satisfy it or to furnish a legal excuse for omitting so to do; in an action against the officer for such default, the creditor is entitled to recover, as damages, at least the amount of the debt and cost of the execution, and interest thereon from the time when the execution, after the delivery of it to the officer, may and ought to be satisfied, according to the provisions of law regulating the sale of personal property on executions.

Where a verdict is manifestly too large, and the excess is readily ascertainable by mere arithmetical computation, such excess may be remitted; and, after its remission, it will furnish no ground for setting aside the verdict and granting a new trial.

ASSUMPSIT.   The declaration was a general count for money paid, laid out, and expended, for the use of the defendant. The defendant pleaded the general issue and statute of limitations.   The plaintiff's writ was sued out on the 3d day of March, 1836, and was served on the 19th day of the same March.

It appeared in evidence, that in December, 1830, the defendant resided in Bristol, and at that time several suits were commenced against him, and his property was attached upon them to an amount sufficient to secure the several debts and the costs which subsequently accrued upon them—that the plaintiff receipted the property, and, upon the defendant's agreeing that the debts upon which the property was attached should be paid, and that the plaintiff should be saved harmless from all damages and costs whatsoever, the property was returned by the plaintiff to the defendant.   The defendant

Sanborn *v.* Emerson.

subsequently removed from Bristol, still promising the plaintiff to save him harmless from all liability, and took with him, and converted to his own use, the property attached as aforesaid. Judgments were afterwards recovered in the several suits, and executions were issued thereon, and placed in the hands of the officer who attached the property, and a demand of the property was made upon the plaintiff within thirty days from the rendition of the judgments. The plaintiff, being unable to surrender the property, and being called upon by the creditors in the executions to make payment of their claims, to discharge himself from his liability, paid the debt and costs, and interest on the same, and the officer's fees, to the officer holding the executions, which payment was made in the winter of 1836.

The several demands in execution, issued as aforesaid, were as follows, viz:

Upham *vs.* Emerson; debt $19.40; cost $10.91; ex., .17
New Chester *vs.* do.     "    2.21;   "    4.84;   "   .17
Abrams *vs.*  do.     "   12.18;   "    4.84;   "   .17
Shaw *vs.*  do.     "    4.79;   "    4.84;   "   .17
Morrill *vs.*  do.     "    4.75;   "    4.84;   "   .17

The first named execution was not discharged by the indorsement of a discharge upon the back of it, but was delivered, on payment of the same, to the officer, who kept it in his hands, at the request of the plaintiff, in order that it might be collected of Emerson, should he return to Bristol. The other executions were paid as above stated, and were discharged upon the back of them by the indorsement of a receipt in full of the contents of them, by the plaintiff's attorney, dated February 20, 1837, excepting the debt of the one in favor of Morrill, which was receipted for on the 2d day of July, 1836.

The justice executions were issued by Ebenezer Kimball, esquire, who had deceased at the time of the trial, and had not been returned to him while living, but were returned, November 5, 1840, to Kimball's administrator.

Upon the foregoing facts, a verdict was taken for the plaintiff, for the sum by him paid as aforesaid, and a motion was made to set the same aside as erroneously rendered, for the reasons following, viz:

1. The defendant contended that the plaintiff could not maintain his action for money paid, because there was an express promise by the defendant to indemnify and save the plaintiff harmless for receipting the property attached, and because no money was paid on the executions and applied to the defendant's use or benefit until after the commencement of this action. 2. Because one who receipts a debtor's property cannot, by law, pay the judgments, and maintain an action for money paid, against the debtor.

*Bell*, for the defendant. In order to entitle the plaintiff to recover, it must appear that the money paid was paid to the use of the defendant. A request implied in law, or existing in fact, must be shown for that purpose. No relation was shown to exist between the plaintiff and the creditors in the executions, from which a request could be implied. The paying of his debts to his creditors would not be at the request of the defendant, unless there was an express request.

To entitle a party to recover for money paid, there must be a legal obligation resting upon such party at the time of the payment, which the defendant ought to pay and discharge, or an express request to pay. Here was neither. The plaintiff, in this case, was not bound to pay the sums which he did pay. The creditors of the defendant had no claim upon the plaintiff. Besides, the payment was not to the creditors until after the commencement of this action. There was an express contract shown to exist to indemnify the plaintiff against his liability upon the receipt. The implied promise was thereby excluded.

The contract was to save the plaintiff harmless of his receipt given to the officer, and that was the extent of his liability. The whole extent of the officer's claim upon the

plaintiff was the amount of the debt and costs of the several executions against Emerson.  The officer was not bound to pay interest to the creditors.  So the plaintiff was bound to pay no more than the debt and cost of the executions.

In a suit against the officer, the damages would be limited to the amount of the debts and costs of the several judgments. The plaintiff was bound to take his remedy on the express contract.  The express and implied contract in this case were not to the same effect, but were essentially different.  Where the contract is collateral, the remedy must be on the express contract.  Such was the contract under consideration.

*Quincy*, for the plaintiff.  It is to be inferred that the plaintiff receipted the property at the request of the defendant.

The obligation arising from the express contract of indemnity, is the same as if the receipt had been executed at the defendant's request.  It was in no manner different.

The liability of the plaintiff was fixed by the placing of the executions in the hands of the officer, and by the demand upon the plaintiff within thirty days after the rendition of the judgments.

The extent of the plaintiff's liability, by reason of executing his receipt to the officer, is the true measure of damages in this case.  The action is as favorable in its present form as if it were brought upon the express contract.

Woods, J.  Several reasons are assigned for setting aside the verdict.  The first is, that there was a special contract proved, which ought to have been declared on.  It is contended that the implied promise relied upon by the plaintiffs was excluded by the fact of the existence of the express promise proved ; and that, therefore, the action, which is *indebitatus assumpsit*, could not be maintained.

It is undoubtedly a general rule of law, that where the parties have made an express contract, the law will not imply a contract ; and that so long as the contract remains in

force, and is neither rescinded, waived nor annulled, the party seeking redress for the breach of it will not be allowed to declare in *indebitatus assumpsit*, but will be compelled to take his remedy upon the contract, and according to the terms of it, and must necessarily declare specially upon the contract itself. *Whiting* vs. *Sullivan, 7 Mass. R.* 107; *Worthen* vs. *Stevens, 4 Mass. R.* 448; *Perkins* vs. *Hart,* 11 *Wheat.* 237; *Wheelock* vs. *Freeman,* 13 *Pick.* 165.

But this general rule is not inflexible, and has its exceptions; and it would seem that when the special contract is not under seal, it is, under some circumstances, optional with the plaintiff, either to declare on the implied promise, or to set out the contract specially in the declaration. *Tousey* vs. *Preston,* 1 *Conn. R.* 175; *Morris* vs. *Wills,* 5 *Har. & J.* 120.

And it is a reasonable and recognized rule of law, forming an exception to the general rule, that where there is a special agreement, the terms of which contain nothing more, and confer no other rights, and impose no other duties or obligations than the law itself, in the absence of such express agreement, would imply, from the transactions of the parties and the circumstances of the case, an action may be maintained upon the implied agreement. *Gibbs* vs. *Bryant,* 1 *Pick.* 118.

That action was *indebitatus assumpsit,* for money paid, laid out and expended. The plaintiff sought to recover a sum of money which he had been compelled to pay as surety upon a promissory note, signed by the plaintiff and Thomas Bryant, and payable to one Warner. At the time of making the note, the defendant and said Thomas Bryant executed to the plaintiff a written contract of indemnity. The making of the note, the purpose for which it was made, the payment of it by the plaintiff, and the fact of the joint interest of the defendant and said Thomas in the money which the note was given to secure, were proved. It was decided that the action was well brought upon the implied promise, and the

plaintiff had judgment for the amount paid, and interest thereon from the time of the payment. The court, in pronouncing their judgment in that case say: "The first reason for setting aside the verdict is, that there was a special agreement which ought to have been declared on. This objection cannot avail the defendant, because the written contract produced contained nothing more than the law would imply."

Does the case under consideration, upon the facts reported, fall within the operation of the principle of law stated and recognized in the case last cited. The plaintiff had receipted the property of the defendant, attached in sundry suits commenced against him, and had the actual custody of it, and at the request of the defendant he delivered the property to him. The implied understanding of the parties must have been, and the implied undertaking on the part of the defendant clearly was, that of indemnity to the plaintiff, either by the payment of the debts and a discharge of the suits, or in some other way. The delivery and restoration of the property to the possession and custody of the defendant, at his request, by the plaintiff, who had the right to retain it, was, under the circumstances, equivalent to an assent on the part of the defendant to the act of the plaintiff in receipting for the property at the time of the attachment. And such assent would most clearly raise an implied promise of indemnity on the part of the party thus assenting and requesting.

The express agreement found by the case contains nothing more, substantially, than a contract of indemnity to the plaintiff, to be performed by the payment of the demands sued, or in some other way, saving the plaintiff harmless of the obligation resting upon him in consequence of his receipting the property attached; and therefore this case would seem to come directly within the principle of the decision in *Gibbs* vs. *Bryant*—the special contract, as it appears, containing nothing more than the law would imply. On this branch of the case, then, we hold that the action is well maintained,

notwithstanding the existence of the special contract of indemnity, and the omission to set it out in the declaration; and the objection that the action should have been brought on the express contract, is therefore overruled.

But a farther objection to the maintenance of the action, stated in the case, is, that no money was paid, prior to the commencement of the action, for the use or which went to the benefit of the defendant. And if this objection be well founded in fact, it must prevail. If the money paid was a mere voluntary payment, which the plaintiff was not legally bound to make; or if it was made to one not authorized to receive it, and to discharge the claims against the defendant, upon which the payment was intended to be made, then, indeed, the money could not be said to have been paid to the use of the defendant, so as to imply a promise in law on his part to repay the same to the plaintiff, and consequently this action could not be maintained.

What are the facts touching this branch of the case? Judgments were recovered in all the actions against the defendant on which the property receipted for by the plaintiff was attached; executions were duly issued thereon, and within thirty days after the rendition of the judgments, were placed by the creditors in the hands of the officer who had attached the property; and the property was duly demanded by him of the defendant within said thirty days; and the executions remained in the officer's hands until the winter of 1836, when the plaintiff paid to the officer so holding the executions the debt and cost thereof, and interest thereon, together with the officer's fees, and for those sums a verdict was taken in this case. The money was then paid to the officer who had both the actual and rightful custody of the executions, and the possession and control of the plaintiff's receipt given for the property attached, which attachment charged the officer with the duty of satisfying said executions, or of offering a legal excuse for omitting so to do. The objection is, that he had no authority to receive the money

Sanborn *v.* Emerson.

at the time when it was paid to him. It cannot be pretended that the officer, at the time he received the executions, had no authority to receive the amount thereof in money, in discharge of them. He was so authorized, as well by the fact of the delivery of them to him by the creditors, as by the express command of the precepts themselves then in force. He was, in fact and in law, the agent of the creditors in the executions for that very purpose ; and the mere reception of it for that purpose would have operated a discharge of the executions, without any other act whatever. And the case finds no express revocation of that authority at any time, nor any intention on the part of the creditors to revoke it. Did the fact that, at the time the money was paid to the officer, the executions had become invalid as such for the purpose of compelling payment by a seizure and sale of property, operate a revocation of the authority to receive the amount from one offering to pay, and thereupon to discharge the executions ? The executions remained in the hands of the officer, and so did the receipt. It cannot be doubted that he had the right to have brought suit on the receipt, and to have received the sum due thereon. Upon the receipt of the executions and the demand, that right was perfect and the liability of the plaintiff was complete. For what purpose and to what end had he such right ? Most clearly, for the purpose of the payment and discharge of the executions, and of indemnity against his liability incurred by reason of the original attachment. Such was the object of taking the receipt. In fact, the executions being placed in the hands of the officer, we hold that, without express revocation, his authority continued, until all legal means for the satisfaction of the same, over which he had control, were exhausted. We therefore have no hesitation in holding, that at the time of the reception of the money the plaintiff was liable to pay, and the officer's authority continued for receiving payment and discharging the executions.

The question whether the verdict was returned for too

large a sum, does not properly arise upon this case, as no exception on that ground was taken at the trial. Interest upon the amount of the executions was included in the verdict. That was urged at the argument, as a ground of exception to the verdict, for which it should be set aside and a new trial granted. It was contended that the plaintiff was not liable upon his receipt to the officer for any thing beyond the amount of the executions, and that the defendant's liability upon his contract of indemnity was to the same extent. But we think, if this exception had been seasonably taken, and could avail at all, (which we do not decide) it could avail only for the reason that the verdict embraced interest on the executions prior to the time when the executions were delivered to the officer for collection and satisfaction, and could have been satisfied by reasonable diligence, in due course of law relative to the sale of property on execution. No question is made of the sufficiency of the property attached and receipted to satisfy the demands sued, as the same were liquidated by the several judgments therein. It has been decided that, under such circumstances, in an action against the officer who made the attachment and failed to satisfy the judgment recovered, and offered no legal excuse for omitting to do so, the true rule of damages is the amount of the execution, with interest after the same ought to have been levied upon the property originally attached. *Fairfield* vs. *Baldwin*, 12 *Pick.* 388. It was conceded at the argument, by the defendant's counsel, that the liability of the defendant was coëxtensive with that of the plaintiff himself to the officer, and that the extent of the officer's liability was the true measure of the liability of the plaintiff by reason of his receipt, he having restored the property to the custody of the debtor. Taking that view of the law to be correct—and a more favorable view for the defendant could not be sustained—no doubt remains of the liability of the defendant to the extent at least of the amount of the executions and interest thereon after such lapse of time from the time of the

delivery of the executions to the officer for collection, as is prescribed by law for the sale of personal property on execution; for such was the extent of the liability of the officer himself to the creditors, according to the decision in Fairfield *vs.* Baldwin.

Moreover, if the verdict were manifestly too large, for the reason alleged, the excess, being a sum readily ascertainable by mere arithmetical computation, might be remitted, and the court would not, in such case, set aside a verdict and grant a new trial, on account of the excess so remitted. *Lambert* vs. *Craig*, 12 *Pick.* 199.

On the whole, we are all of the opinion that in this case the exceptions taken at the trial cannot prevail, and that there must be

*Judgment on the verdict.*