Edmonds, J.
This being an application to open a stated account, the plaintiff must either charge fraud or specify particular errors. When fraud is proved, it will be a sufficient ground to open the whole account; but the case is different where errors or mistakes only are shown to exist in the account. For there the account will not be opened, but the party will merely be permitted to surcharge and falsify it. (2 Dan. Pr. 764, and cases there cited.) The bill, in this case, has the double aspect, and charges fraud and error, specifying it. The fraud is not proved. The allegation of the bill in this respect is, that the defendants knew of the alleged errors, before the settlement, and concealed the same from the plaintiff. Of this there L no evidence in the case, but there is an admission that the defendants did not know of them, or have any information in regard to them until after the compromise had been made, and the judgment had been obtained and paid. There is no ground, therefore, for opening the whole account. And the only question is, whether the plaintiff shall be allowed to surcharge and falsify it. A surcharge is appropriately applied to the balance of the whole account, and supposes credits to be omitted which ought to be allowed; and falsification applies to some item of the debits, supposing it to be wholly false, or in part erroneous. (1 Story’s Eq. Jur. § 525.) The effect of surcharging and falsifying is, to leave the account in full force and vigor, as a stated account, except so far as it can be impugned by the opposing party. (Pitt v. Cholmondely, 2 Ves. sen. 565. Perkins v. Hart, 11 Wheat. 237. Story’s Eq. Pl. §§ 801, 802. 1 Story’s Eq. Jur. § 523.) Upon this principle it is manifest that the settlement between these parties ought not to be disturbed ; because it is clear that if due allowance were made to the plaintiff for the alleged errors, with interest upon them, there was still a balance due from T. H. Smith & Son to Hone & Sons, at the time the judgment was *593 rendered, of over $228,000. This is upon the idea that the moderate course would be taken, as is sometimes done, of opening to contestation one or two items only, which are specially set forth in the bill as being erroneous or unjustifiable, and treating the account, in all other respects, as conclusive. This is the course proper to be adopted where, as in this case, the bill is founded on specific charges, and where neither the answer nor the proofs warrant an inquiry beyond those special matters. (Consequa v. Fanning, 3 John. Ch. Rep. 595.) But the plaintiff seeks, by his bill, to go farther than merely to contest the two items of $30,000 and $15,000. He desires to surcharge and falsify generally; and that upon the allegation that his house was improperly charged with guarantee commissions on the sales of teas. It therefore becomes necessary to look into this further allegation of error, and see whether it affords ground for surcharging and falsifying, or for a mere contestation on that point. It seems to me that it does neither; for the letter of 16th April, 1828, from T. H. Smith & Son, is a distinct agreement that Hone & Sons shall be allowed a guarantee commission of 2£ per cent on all notes taken for the sale of teas. At the time this letter was written, one cargo of teas had been sold at six months’ credit, but no proceeds had been realized; yet Hone <fc Sons were in advance to Smith & Son over $700,000. All this afforded a sufficient consideration for the agreement to allow guarantee commissions; and the agreement being so clearly made out, there is in truth no cause whatever for complaining of the charge, or for opening the account, even for a mere contestation of this item.
There being then no chaige of fraud in the settlement of the accounts, sustained by the evidence, there is no reason for opening the accounts generally. There being nothing in the evidence to sustain the application for leave to surcharge and falsify, and there being no use in opening to contestation the two specified items, because the balance against T. H. S. & Son would still be greater than the amount of the judgment, the foundation of the bill of complaint, in its character of seeking to open a settled account, entirely fails. It remains to regard *594 it in its character of seeking to set aside a settlement or compromise between the parties.
This is founded, of course, on the idea that this was not a stated account, but a compromise merely. Now it is not necessary that an account should be signed by the parties to make it a stated account. It is enough that it has been examined and accepted by the parties; and this acceptance need not be express: it may be implied from circumstances. (Willis v. Jernegan, 2 Atk. 251.) Between merchants at home an account which has been presented, and no objection made thereto, after the lapse of several posts, is treated, under ordinary circumstances, as being by acquiescence, a stated account. (1 Story's Eq. Jur. § 526. Freeland v. Heron, 7 Cranch, 147. Philips v. Belden, 2 Edw. Rep. 1.) Now in this case it appears that sketch accounts were rendered from time to time, and a final account rendered in 1832, yet no fault was found with it, until after a lapse of 3 or 4 years, when a suit had been brought upon it, and in that suit there was a final settlement, and a payment of the amount admitted to be due. The language of the vice chancellor, in 2 Edw. becomes applicable, that the party keeping the account by him, and making no objection within a reasonable time, is considered from his silence as acquiescing, and is bound by it as a stated account; and if the balance is paid, it becomes a settled account. It would seem then that this has all the features of a stated and settled account, and ought to be regarded in no other light by this court. (Ficket v. Short, 2 Ves. sen. 239. Murray v. Poland, 3 John. Ch. Rep. 569.) But in whatever aspect the bill is to be regarded, it seems that there are several insuperable objections to granting its prayer.
One is that the defendant’s books have been destroyed by fire, and cannot now be produced. The accounts were rendered when the books were in existence, and the settlement was made when the transactions were comparatively recent, and when both parties had the means of arriving at the truth in regard to them. While the defendants labor under this disadvantage, the plaintiff omits, in this suit, as he did in the suit at law, to *595 produce bis own books or vouchers, or the accounts rendered to him by J. Hone & Sons, and after a lapse of ten years, relies solely upon an error, which he alleges he has discovered in a bill of particulars. The equity of the case, from this bare statement of it, is evidently with the defendants.
Another objection to granting the relief asked for is, that the plaintiff has been guilty of negligence in detecting the errors which he alleges he has discovered. From 1832, when the account was rendered to him, up til the filing of this bill in 1843, he had precisely the same opportunity and means of detecting and exposing these alleged errors, that he has at this moment. It is a most material ground in such cases to ascertain whether the bill is brought to open and correct errors in the account recenti facto, or whether the application is made after a great lapse of time. Where the demand is of a legal nature and might be cognizable at law, (and this is such a case,) courts of equity govern themselves by the same limitations as are prescribed by the statute of limitations in regard to suits in courts of common law. (1 Story’s Eq. Jar. § 529.) And where the demand is of an equitable nature, or the bar of the statute is inapplicable, courts of equity have another rule, and that is not to entertain stale or antiquated demands, and not to encourage laches and negligence. (Rayner v. Pearsall, 3 John. Ch. Rep. 579. Ray v. Bogart, 2 John. Ca. 432. Mooers v. White, 6 John. Ch. Rep. 360.) And this, from considerations of public policy, from the difficulty of doing entire justice, when the original transactions have become obscure by the lapse of time, and the evidence may be lost, and from the consciousness that the repose of titles, and the security of property, are promoted by a full enforcement of the maxim, vigilantibus, non dormientibus jura subveniunt. (1 Story’s Eq. Pl. supra. Jeremy on Eq. Jar. b. 3, p. 2, ch. 5, p. 54, § 549.)
If, then, the plaintiff’s claim in this suit is a legal demand, enforcible in a court of law, it is barred by the statute of limitations; more than six years having lapsed before this suit was brought. (Hovenden v. Ld. Annesley, 2 Sch. & Lef. 629.) If it is an equitable demand, it is barred by reason of its stale *596 ness; on the presumption that a man will naturally enjoy what belongs to him, and therefore from his not having sought relief, that his claim has been satisfied or relinquished; and upon the policy that one shall not, by neglecting to establish his demands, subject another to insuperable difficulties in resisting them. (Chalmer v. Bradley, Jac. & W. 63. Hillary v. Waller, 12 Ves. 265. Pickering v. Ld. Stanford, 2 Ves. jr. 280. Jeremy, 549.) In the language of Ld. Erskine, (13 Ves. 397,) human affairs call aloud for such principles in the administration of justice.
There are, however, still farther reasons why the plaintiff’s claim ought not to be successful in this case. A leading principle of equity jurisprudence is that he who seeks equity must do equity. By the agreement out of which flowed the judgment against Bruen of $200,000, he received a release of 136 out of 240 lots of land, free from the incumbrance of their being pledged for the payment of the claim of Hone & Sons against the firm of Smith & Son. He does not, in his bill, offer to restore those lots to their former position; nor indeed can he do so; for it appears from the pleadings, that by his assignment to Iddings, the receiver, .he has passed away from himself all control over them, if any of them are yet left unsold by him. To grant the prayer of his bill now, would be to secure to him all the benefits of that agreement, yet release him from a very important part of its obligations, (McDonald v. Neilson, 2 Cowen, 139.)
Again; this matter has been twice adjudicated upon by competent tribunals, once in the court of law and once in a court of equity, on the bill filed to enforce the trust for the security of Hone & Sons’ claim. And it is too late now for the party to apply to have a re-examination of it, unless fraud be established, or mistake be shown, which the party did not know and could not have guarded against at the proper time. No fraud is shown, nor any mistake which the plaintiff had not the full means of ascertaining and exposing as well before the judgment at law as now. A judgment or decree of a court possessing competent jurisdiction is final not only as to the matter actually *597 determined, but as to every other matter which the parties might litigate in the cause, and which they might have had decided. (Le Guen v. Governeur, 2 John. Cas. 492, 2nd ed. and cases cited in note a.) The reasons in favor of this extent of the rule are founded in the propriety of silencing the contentions of parties, and of accomplishing the ends of justice by a single and speedy decision of all their rights. It is evidently proper to prescribe some period to controversies of this sort. And what period can be more fit and proper than that which affords a full and fair opportunity to examine and decide all their claims ? The rule requires no more than a reasonable degree of vigilance and attention: a different course might be dangerous and often oppressive. It might tend to unsettle all the determinations of law, and open a door for infinite vexation. (Per Radcliff, J. 1 John. Cas. supra.) And more than this, that judgment was paid under the compulsion of legal process, and it would tend to encourage the greatest negligence if, after all that, the. courts were to open a door to parties to try their causes again because they were not properly prepared the first time. After a recovery by process of law there must be an end of litigation: otherwise there will be no security for any person. (Per Ld. Kenyon, and Grove, J. Marriot v. Hampton, 7 T. R. 269.)
Under this accumulation of principle and authorities, the plaintiff’s case must necessarily fall, and his bill be dismissed.
Decree accordingly.