[No. 1500.]

## The Colorado Fuel & Iron Co. v. Chappell.

1. Pleading—Replication—Demurrer.

Plaintiff sued for money alleged to have been paid to defendant as bailee to be expended for plaintiff's benefit, and wrongfully converted to defendant's own use. Defendant answered setting up a settlement and accounting covering all money received by him, and that a balance was found due and paid him by plaintiff. Plaintiff replied admitting the settlement and payment of balance to defendant, but alleged that it was accomplished by defendant's false representation that he had expended the money in plaintiff's behalf, that at the time plaintiff had no knowledge that defendant's representations were false, and relying on said false representations was induced to make the settlement. *Held* error to sustain a demurrer to, or motion to strike out, the replication. As the answer did not admit the conversion it was competent for plaintiff by confession and avoidance to show that the settlement did not embrace the cause of action sued on.

2. Pleading—Demurrer—Error Waived.

Error sustaining a demurrer to a pleading is not available on appeal where the pleading demurred to is afterwards amended.

3. Pleading—Replication.

Since under section 71, civil code, matters in avoidance pleaded in the replication are to be deemed as controverted, such a replication does not place defendant at a disadvantage in having to meet proof without a pleading on which to base his evidence.

4. Account Stated.

An account stated is only *prima facie* evidence of its own correctness and when interposed as a defense to an action, either at law or in equity, may be disputed and overthrown in the same suit.

5. Pleading.

An allegation in a replication, to avoid a settlement pleaded in the answer, that the settlement was procured by false representations was not an abandonment of the original cause of action nor a departure therefrom.

6. Pleading—Demurrer—Deficiency Cured.

While a general demurrer will reach back to the first bad pleading, a demurrer by defendant to plaintiff's replication will not reach back to a defective answer if the replication cures the deficiency in the answer.

7. Limitation.

An action for the recovery of money wrongfully converted may be commenced at any time within six years.

Vol. XII—25

*Appeal from the District Court of Arapahoe County.*

Mr. Chas. H. Toll, Mr. D. C. Beaman and Mr. D. V. Burns, for appellant.

Messrs. Yeaman & Gove, for appellee.

Thomson, P. J.

On the 10th day of November, 1894, the Colorado Fuel and Iron Company commenced its action against Delos A. Chappell to recover for the alleged wrongful conversion of a fund with which the defendant had been intrusted by the plaintiff's assignor. In due time the defendant answered. The plaintiff demurred to the answer, and, upon the hearing of the demurrer, the plaintiff took leave to amend its complaint. The amended complaint, which was filed on the 23d day of January, 1896, consisted of two counts, which appear to have been simply different forms of statement of the same cause of action. The defendant demurred to the first count, and answered the second. The demurrer was sustained. The answer set forth six defenses, to the fourth and sixth of which the plaintiff demurred. The demurrer was sustained as to the fourth, and overruled as to the sixth. The plaintiff then filed its replication. A demurrer was interposed and sustained to the replication to the second defense. Thereupon the plaintiff filed its amended replication to that defense, which, on motion of the defendant, was stricken out, and judgment entered in his favor on the pleadings. The plaintiff has brought the case here by appeal.

Inasmuch as the only questions for determination here, arise upon the pleadings, such examination of the averments of both parties, as is necessary to an intelligent consideration of those questions, must be made. Error is assigned to the ruling upon the demurrer to the first count of the complaint, but as, in our view, all the proof necessary to establish the cause of action there stated, is also admissible under the al-

legations of the second, and as the defendant is not entitled
to an opinion upon the question of its sufficiency, we shall
leave it without further mention.   The second count averred
that the plaintiff was a corporation, brought into existence
in pursuance of law, by the consolidation, on October 21,
1892, of two corporations theretofore existing, the Colorado
Coal and Iron Company, and the Colorado Fuel Company,
by virtue of which consolidation, and of conveyances and
assignments in conformity therewith, the plaintiff succeeded
to all the property, rights and assets of the Colorado Coal
and Iron Company.   It stated that on the 26th day of
September, 1887, a contract in writing was entered into be-
tween the coal and iron company as party of the first part,
and the defendant as party of the second part, the provisions
of which, in so far as we deem it necessary to state them,
were as follows: " Whereas, the party of the second part
has, by a certain agreement entered into between said party
of the second part and Dr. Beshoar, of Trinidad, Colorado,
securing an option for the controlling interest in the stock of
the Gray Creek Coal and Coking Company, said company
being the owner of certain coal and other lands situated in
Las Animas County, Colorado, and lying to the east and north
and south of Engleville, and formerly known as the Beshoar
or Four C's property; and Whereas, the said party of the
second part is desirous of having the said property pros-
pected, developed and worked by said party of the first part;
and Whereas, said party of the first part is desirous of ob-
taining a lease of said property; now, therefore, In consid-
eration of the sum of $1 paid to said first party by said second
party, and in further consideration of the mutual covenants
and agreements herein contained, the said first party hereby
covenants and agrees with said second party that it will at
once proceed to prospect said land with view of determining
the character and quality of the seam or seams of coal which
may underlie said property, and it will prosecute said work
of prospecting with all the diligence and energy of which
such work is capable.

2. That in the event said first party shall find, as a result of said prospecting, that said land contains a seam or seams of coal of workable value, then it will proceed to develop the same by means of drifts, tunnels or shafts, and will proceed to erect thereon suitable buildings, shoots and all necessary appliances for conducting the operation of coal mining upon said land as fast as said work can be reasonably and economically prosecuted.    In consideration of which, the said party of the second part agrees, in the event that and as soon as said party of the first part shall have expended in said prospecting and developing said lands, and in the erection of buildings, coke ovens, shoots, tracks and all other appliances for mining coal and working said lands, and in the mining of coal from said lands the sum of $60,000, then said party of the second part is to have made, executed and delivered to said party of the first part, by the Gray Creek Coal and Coking Company, a good and sufficient lease of said entire property."    The complaint further averred that after the execution of this contract, it was agreed between the parties that the company, instead of making the expenditures itself, should turn the money, or so much of it as might be required, over to the defendant, to be by him laid out in the manner provided by the contract, and on account, and under the direction and control, of the company; and that in pursuance of the contract, and the subsequent agreement, the coal and iron company, between October 7, 1888, and December 31, 1888, paid over to the defendant $58,751.06, to be by him expended in the manner provided by the contract; but that instead of using the money in that manner, he wrongfully and unlawfully converted the whole of it to his own use.

The answer stated, among other things, that on the 31st day of December, 1888, the coal and iron company and the defendant came to a mutual accounting concerning the matters stated in the complaint, which accounting covered all moneys received by the defendant from the company pursuant to the contract and the verbal agreement, and all moneys

paid, laid out and expended by the defendant for the company in pursuance of the contract and agreement; and that upon the accounting there was found to be due from the company to the defendant $3,452.21, which sum the company, on the same day, paid to the defendant in full settlement of all dealings and transactions between the defendant and the company under the contract and agreement.

The replication admitted the accounting and settlement as stated in the answer, but averred that the settlement was brought about by the fraudulent conduct, concealment and representation of the defendant in this: That at the time it was made he represented to the company that he had expended the money in accordance with the terms of the written contract and the verbal agreement, and that the company, knowing nothing to the contrary, relied upon the representation; whereas, in fact he had not expended any part of the money as required by the contract and agreement, or for the plaintiff's benefit, but had converted the whole and every part of it to his own use. The replication also alleged that the fact of the falsity of the representation was not known to the coal and iron company until long after the settlement. The grounds of the demurrer to this reply were that it did not show that the fraud which it alleged, was discovered within three years next preceding the filing of the replication, and that it did not state facts sufficient to constitute a replication. The amended replication did not differ from the other, except in that it contained a fuller statement of the facts constituting the alleged fraud, and, in addition, averred that those facts were not discovered until within three years next before the commencement of the action. This last allegation was probably incorporated into the pleading to meet the supposed view of the court, but in our opinion, as will be seen hereafter, it was unnecessary, and must be regarded as mere surplusage. This amended replication, on a motion, the grounds of which were that it did not constitute a reply, that it was a departure, that it did not allege when the fraud was discovered, and that it attacked collaterally an account stated, was stricken out.

The complaint in this action, as it stood after the first count was adjudged insufficient, was for the wrongful conversion of money in the hands of the defendant as bailee.    It sounded in tort, and not in contract.    To this it was answered, among other things, that an accounting was had between the defendant and the coal and iron company, which covered all the moneys received by the defendant from the company, and all the moneys expended by the defendant for the company, on which it was found that he had disbursed $3,452.21 more than he had received, and that this balance was paid to him in full settlement of all dealings and transactions between him and the company pursuant to the contract and agreement. Now in order that that settlement might be a bar to this suit, it must have embraced the plaintiff's cause of action.    If the misappropriation of the money by the defendant was not known to the coal and iron company at the time of the settlement, and received no consideration in the settlement, then there was no adjustment of the subject-matter of this suit. An ascertainment may have been had of the amount of money paid by the coal and iron company to the defendant, but no cause of action accrued on account of the payment of that money, because it was paid in pursuance of the contract. The plaintiff's right to a recovery does not grow out of the mere payment of the money by the coal and iron company to the defendant, but out of the misuse which the defendant made of the money after he had received it.    If the replication speaks the truth, whatever the alleged accounting may have accomplished, or whatever may have been its purpose, this controversy was entirely unaffected by it.    If the answer had admitted the conversion, and had then averred an adjustment of differences between the parties, which included all claim of the plaintiff on account of the defendant's wrongful act, then, by a simple denial on the part of the plaintiff, the issue would have been squarely presented.    But as the form of the answer was such that the question could not be raised by a denial, it was incumbent upon the plaintiff, if it desired to show that the settlement did not embrace this

claim, to plead the facts connected with the settlement in its replication.

And here we may pause for a moment to notice an objection to the replication which seems to have arisen in the mind of the court.   In a written opinion, setting forth the grounds of its ruling upon the demurrer to the replication, it stated as a reason for holding that the replication was not a proper pleading, that if the plaintiff were permitted to show that the account stated was obtained by fraud or false representation, the defendant would be placed in the position of being compelled to meet the proof without any pleading on which to base his evidence.   The replication is the last pleading allowed, and we infer from the observation that the court was of the opinion that because the defendant could not plead further, the new matter of the replication, if suffered to remain, would in some way place him at a disadvantage. But, for the purposes of justice, it may be as necessary to confess and avoid in a replication as in an answer, and the court must have overlooked section 71 of the code which provides that a statement in the replication of matter in avoidance shall, on the trial, be deemed controverted by the adverse party.

The complaint stated a complete cause of action.   The plaintiff was not bound to anticipate the answer of the defendant, but when the latter pleaded a settlement in bar of the action, necessity was upon it to meet the plea, if it could, by facts in avoidance.   It was error to sustain the demurrer to the original replication.   However, as the pleading was amended, the error is not now available, but the striking out of the amended replication, the question of the correctness of which is properly before us, was equally erroneous, and necessitates a reversal of the judgment.

While what we have said disposes of this appeal, we would hardly feel that we had done our whole duty if we did not bestow some attention upon a position assumed by the learned counsel of the defendant, and elaborately and ably supported by them.   The argument is that the replication is an attempted

statement of a cause of action for opening an account settled, on the ground of fraud, and the taking of a new account; that, if allowed to stand, it would substitute an entire new cause of action for that stated in the complaint, and that it is, therefore, a departure. We think counsel attach undue solemnity to an account stated. It is only *prima facie* evidence of its own correctness, and while a party may, if he finds it oppressive, institute an original proceeding in equity to be relieved from it, yet when it is interposed as a defense to an action, either at law or in equity, it may be disputed and overthrown in the same suit. A preliminary proceeding to set it aside is never necessary to enable a plaintiff to make his principal cause of action available. Wherever it is thrust forward, in whatever form of action it is pleaded, it may be impeached. In the language of Mr. Justice Washington, in *Perkins v. Hart*, 11 Wheat. 237 : " If, to a bill for an account, the defendant plead, or in his answer rely, upon a settled account, the plaintiff may surcharge by alleging and proving omissions in the account, or may falsify by showing errors in some of the items stated in it. The rule is the same in principle at law ; a settled account is only *prima facie* evidence of its correctness. It may be impeached by proof of unfairness or mistake, in law or in fact." That was an action of *indebitatus assumpsit*, to which a settlement upon an account stated was interposed as a defense.

The charges in this replication, of fraud and misrepresentation by the defendant, did not constitute the statement of a cause of action. The real question was whether the settlement was intended to embrace this controversy. If the coal and iron company was ignorant of the existence of the facts out of which the controversy finally arose, then the claim now asserted was not intended to be, and was not, included. The replication asserted a want of knowledge of facts which it was necessary to know in order to a settlement of the matter in litigation, and the fraud of the defendant was alleged, not as the groundwork of an action, but as a reason for the ignorance. The cause of action was the misappropriation by the

defendant of the money of the coal and iron company, to whose rights the plaintiff had succeeded, and, surely, the defendant's act was none the less a conversion, and the conversion was none the less wrongful, because of his false representation concerning the use made by him of the money. His fraudulent practices in connection with the act, did not change the legal character of the act. The plaintiff sought a remedy for the wrong, and the averment in his replication of matters which would, if true, avoid the effect of the settlement pleaded in defense, was not an abandonment, or a variance, in any respect of the cause of action set forth in his complaint, and was therefore not a departure. If established by proof, it would overthrow the defense and clear the way to a recovery upon the cause of action. This is the only office it could perform, and it was no more a departure, than a denial would have been, if the allegations of the answer had been sufficiently full to enable the plaintiff to raise the issue by a denial.

There is little further to be said concerning the case. There were other defenses alleged in the answer, but they were replied to. The errors assigned to rulings in the course of the settlement of those pleadings need no notice, because issues are joined, and the case is ready for a trial of the facts. The objection in behalf of the plaintiff that the court refused to carry the demurrer to the first replication back to the defense, and adjudge it also insufficient, is not well taken. While it is true that a general demurrer reaches back to the first bad pleading, and while we have grave doubts whether the defense is sufficiently comprehensive to make it a good plea, yet the plaintiff replied, and as we think, made good the deficiencies of the answer. But that replication was sufficient. The demurrer should have been overruled, and it therefore could not have been carried back to the answer. The amended replication took the place of the other, and was equally good, and the order striking it out was as erroneous as that sustaining the demurrer. Its statement that the fraud was not discovered until within three years before the commencement

of the action, was wholly unnecessary, and immaterial. It is true that by our statute of limitations, bills for relief on the ground of fraud, must be filed within three years after the discovery, by the aggrieved party, of the facts constituting the fraud, and we suppose that allegation was inserted to avoid an objection raised by the demurrer, and countenanced by the court. But this was not a bill for relief on the ground of fraud. It was an action at law for wrongful conversion, and could be commenced at any time within six years after the cause of action accrued. The judgment is reversed and remanded, with instructions to the court below to reinstate the replication, and try the cause upon its facts.

*Reversed.*