## M. W. BUFFKIN *v.* BAIRD & ROPER.

When a party to a contract, by his own fault or wrong, prevents the other from fully performing his part of the contract, the party thus in fault cannot be permitted to take advantage of his own wrong, and screen himself from payment for what was done under the contract.

In such case the measure of damage is, that the plaintiff is entitled to recover for his labor and expense in endeavoring to perform his contract, as upon a *quantum meruit.*

(The cases of *Young* v. *Jeffreys*, 4 Dev. & Bat. 216; *White* v. *Brown*, 2 Jones 403; *Brewer* v. *Tysor*, 3 Jones 180; *Mizell* v. *Burnett*, 4 Jones 249; *Nibbett* v. *Herring*, Ibid 262; *Dula* v. *Cowles*, 7 Jones 290; *Woodley* v. *Bond*, 56 N. C. Rep. 397, cited and approved.)

CIVIL ACTION, tried before *Eure, J.,* at Spring Term, 1875, CAMDEN Superior Court.

The following are the facts as disclosed by the statement of the case as settled by his Honor and sent up to this Court as a part of the record :

The plaintiff believing that he was the owner of one undivided fourth of a tract of land in Pasquotank county, known as the Sawyer patent, by deed from J. S. Proctor, offered to sell the same to the defendants. The defendants declined to buy so small an interest, but expressed a willingness to buy three-fourths of the whole. The plaintiff represented that he owned one-fourth and could control two other fourths, whereupon the following agreement was entered into :

" This is to certify that we, Baird & Roper, do bind ourselves to pay to M. W. Buffkin, thirty-three hundred dollars cash for three-fourths of a tract of swamp land known as the F. B. Sawyer Patent, said to contain twelve hundred and fifty-eight acres, and situated in Pasquotank county, North Carolina ; the money to be paid upon the delivery to us of a good and sufficient deed or title deed, to be delivered to us within one hundred days.

Pasquotank county, April 13th,'1870.

      (Signed)                   BAIRD & ROPER.

Witness : M. J. BUFFKIN.

" This is to certify I, M. W. Buffkin, have this day bound myself to make to Baird & Roper a good and sufficient title to three fourths of a tract of land known as the F. B. Sawyer Patent, situated in Pasquotank county, North Carolina, said to contain twelve hundred and fifty-eight acres, for the sum of thirty-three hundred dollars, to be paid on delivery of a good and sufficient deed of general warranty, the deed to be made within one hundred days. Should the parties now holding a portion of the title to the above mentioned land die before I can procure a deed, I am to be released from the above obligation.

April 13th, 1870.

(Signed)                                        M. W. BUFFKIN.

Witness : M. J. BUFFKIN.

It was in evidence that immediately after the execution of the contract by the plaintiff and the defendants, the plaintiff began his efforts to secure the title to the land mentioned in the contract, and to that end he employed counsel to investigate the title and to go South, if necessary, to purchase the moiety belonging to M. V. Moore, or from such parties as he might ascertain to have the title. In eight days after the execution of the contract, the defendants employed counsel to purchase said land for them, and within a few days thereafter and within one hundred days, he obtained a deed for one moiety of said land from M. V. Moore, of Mississippi. The deed conveyed all her interest therein. The defendants purchased the other moiety of said land from the owner in Kentucky, about two years after that time. The whole tract cost them two thousand dollars.

The plaintiff learning that the defendants had purchased an undivided half interest in the land within the one hundred days, directed his counsel to make no further efforts to secure the title to any portion thereof. The plaintiff expended but a few dollars in his effort to obtain the title.

Upon these facts the plaintiff contended :

1. That defendants by purchasing one undivided moiety o

said land within the one hundred days, had violated their contract with him, by coming between the plaintiff and the owner of said land and had put it out of his power by their own act to comply with his contract.

2. By their purchase from M. V. Moore, they had obtained title to the entire tract of land for the sum of two thousand dollars and that the plaintiff could have purchased it for that sum.

3. That the defendants were answerable to him in damages, and that the measure of the damages was the difference between what it cost defendants to purchase three-fourths interest in said land and what they had contracted to pay him for the three-fourths interest.

The defendants contended :

1. That the plaintiff by false statements and misrepresentation of facts in regard to the land, had induced them to enter into the contract with him. That they were not bound by it and had the right to purchase within the one hundred days from the owners.

2. That they had purchased only an undivided moiety from M. V. Moore, and the other moiety they had purchased from the Cowper heirs in Kentucky.

3. That if defendants had violated their contract, the plaintiff was entitled to recover only nominal damages, or at most to recover as damages only such amounts as he had paid out in his effort to secure title to said land, and for his time and trouble to secure the same.

4. That it was one of those contracts for the valuation of which the plaintiff sought to recover damages for the " loss of a good bargain," and that this was the only loss sustained by plaintiff and therefore he was not entitled to recover.

The following issues were submitted to the jury, and responded to as stated :

1. Did the defendants Baird & Roper by their own acts, their agents or attorneys, before the expiration of one hundred days from April 13, 1870, put it out of the power of the plain

tiff to comply with his contract to make a good title to three-fourths interest in the F. B. Sawyer patent.

The jury find that they did.

2. Did the plaintiff Buffkin, by misrepresentation, induce the defendants Baird & Roper to enter into the contract made with him on April 13, 1870?

The jury find that he did not.

3. Was an estate in fee simple in the F. B. Sawyer patent on April 13, 1870, in Mary V. Moore, under the will of Elizabeth Proctor, or was one half of the patent in Mary V. Moore and the other half interest in the heirs of Wills Cowper?

The jury find that one half interest was owned by the Cowper heirs.

4. If the defendants, Baird & Roper, did prevent the plaintiff Buffkin from complying with his contract; and if the plaintiff Buffkin did not induce the defendants by misrepresentation to enter into said contract, what damages has the plaintiff sustained by reason of his being prevented by defendants from complying with his contract?

The jury assess the damages of the plaintiff at eighteen-hundred dollars.

The Court charged the jury, " That if the defendants, by their own acts, put it out of the power of the plaintiff to comply with his contract and the contract was not induced by the misrepresentation of the plaintiff, the plaintiff was entitled to recover. That the defendants should have given the plaintiff one hundred days to perform his contract and the purchase by them of any interest in said land, greater than one-fourth interest, within the one hundred days was a violation of the contract and entitled the plaintiff to damages.

In regard to the measure of damages, the Court charged the jury that the amount of damages to be assessed was a matter for them. The general rule of law is that where a party sustains a loss by reason of a breach of contract he is, so far as money can do it, to be placed in the same condition with respect to damages as if the contract had been performed.

So in this case, if the jury find the first and second issues in favor of the plaintiff the measure of his damages may be placed at the difference between what it would have cost the plaintiff to have procured the three-fourths interest in the land and the price the defendants contracted to pay the plaintiff for the three fourths interest, they might consider the amount it actually cost the defendants as some evidence on that point.

The Court further charged the jury that if the plaintiff by misrepresentations induced the defendants to enter into the contract, he would not be entitled to recover and that they should find for the defendants.

The defendants excepted to the charge of his Honor.

1. For that the plaintiff having no interest in the land at the time he contracted to sell cannot maintain this action. His only interest was the anticipated profits of a good bargain.

2. For that the rule of damages was incorrectly laid down by the Court, in saying that the jury might assess the plaintiff damages at the difference between what it would have cost him to have procured the three-fourths interest in the lands and the amount the defendants contracted to pay him for said interest. That the plaintiff was only entitled to nominal damages.

Upon the finding of the jury the defendants moved for a new trial. Motion overruled and judgment rendered according to the verdict. From this judgment defendants appealed.

*Gilliam & Pruden,* for appellants.
*Busbee & Busbee,* contra.

RODMAN, J. The two writings executed by the plaintiff and by the defendants, respectively, formed a single contract, by which the plaintiff was bound to convey to the defendants a good title to three-fourths of the Sawyer land within one hundred days, and the defendants were bound on receiving such title to pay the plaintiff $3,300.

Ordinarily, it is proper to consider first the right of the

plaintiff to recover, as unaffected by any supposed defence. But in this case it will be convenient first to consider and dispose of a defence which goes to the foundation of the contract, and, which if it could be maintained, would render any further consideration of the case unnecessary. The defendants allege that they were induced to enter into the contract with the plaintiff, through his representation that he owned one-fourth of the land, and could control the title to an additional half, which representation turned out to be false in both particulars. The jury find that the defendants were not induced to make the contract by misrepresentation. They do not say there was no misrepresentation. It appears from the complaint that the plaintiff claimed to own one fourth of the land when the contract was made; and also, when the action was brought, which fact he says was known to the defendants at the making of the contract. In this claim, it seems from the case, he was mistaken, as Mrs. Moore owned one-half the land, and the Cowpers the other half. Whether the misrepresentation or mutual mistake, as to the plaintiff's estate in the land, induced the defendants to enter into the contract, is matter of law, and we are of opinion that taken in connection with the plaintiff's statement to the defendants that he did not own the other three-fourths, it was not such a *material* inducement as would require a court of equity to set aside the contract by reason of it. It was immaterial to defendants whether the plaintiff at the time of the contract owned any estate in the lands or not, provided he performed his contract by buying from the actual owners.

This was evidently the view of the defendants, as when they discovered the mistake, as they say they very soon did, they gave no notice to the plaintiff of their intention to rescind the contract, but permitted him to continue to act upon it as if it was in force. This defence, therefore, may be put out of view. We return now to the consideration of the plaintiff's case. Is it clear that the conveyance of a good title to three-fourths of the land by plaintiff, or a tender of a conveyance,

was a condition precedent to the liability of the defendants to pay him the sum stipulated for. If a person contracts to do a certain entire act, for which he is to receive a certain sum, he cannot recover the price as upon a complete performance, notwithstanding it was prevented by inevitable accident. *Cutter* v. *Powell*, 1 Smith, L. C., 1, and notes; *Appleby* v. *Myers*, E. L. R., 2 C. P.; *Young* v. *Jeffreys*, 4 Dev. & Bat. 216; *White* v. *Brown*, 2 Jones, 403; *Brewer* v. *Tysor*, 3 Jones, 180; *Mizell* v. *Burnett*, 4 Jones, 249; *Nibbett* v. *Herring*, Id., 262; *Dula* v. *Cowles*, 7 Jones, 290.

The complaint, however, is not framed upon the idea that the plaintiff is entitled to recover upon the express contract. The plaintiff contends that there results from the express terms of the contract, a promise by defendants that they will do nothing within the one hundred, days to prevent plaintiff from performing his part of the contract, for the breach of which he is entitled to damages. It cannot be doubted that when a party to a contract (as the defendant in the present case) by his *fault* or *wrong*, prevents the other from fully performing his part of the contract, the party thus in fault cannot be permitted to take advantage of his own wrong and screen himself from payment for what has been done under the contract. 2 Pars. Cont., 523. But the defendants in the present case do not admit that by their contract they restricted themselves from buying the land in question for any time whatever. They argue that it is no more than if they had made a contract with plaintiff for the delivery to them of a quantity of corn, within a certain time, for a certain price, which would not prohibit them from offering a higher price for other corn, although the incidental effect might be to raise the price, and perhaps throw a loss on the plaintiff. We think, however, the cases are not analagous, and that there was an implied contract on the part of the defendants to do nothing within the hundred days to prevent the plaintiff from buying the land. This was held in the case of *Marshall* v. *Craig*, 1 Bibb. (Ky.,) 379. It is clear, upon common sense and numerous authorities, that

19

inasmuch as the defendants made it impossible for the plaintiff to comply with his contract, they discharged him from it, and would not be entitled to recover anything from him by reason of his failure to perform. Com. Dig., condition L., 6.

We think it follows from what has been said that the plaintiff is entitled to recover *some* damages from the defendants by reason of their injurious interference. We have found it more difficult to say what should be the measure of damages. This is a question of law, although the jury must apply the rules of law to the facts, if they be in dispute. His Honor, the Judge below, was of opinion that the plaintiff was entitled to recover the difference between what defendants actually paid for three-fourths of the land, and what they had agreed to pay plaintiff for it, thus putting the plaintiff in the situation he would have been in if, without trouble or other expense, had he bought within the hundred days, at the price at which the defendants bought.

Expressions may be found in the text books, to the effect that if one party be prevented from performing his contract by the act or default of the other, he is in the same condition as if he had performed it. But an examination of the cases (so far as I have been able to examine them) will show, that this doctrine applies only:

1. To protect the party failing to perform from an action by the party preventing him.

2. Perhaps also in cases where the plaintiff has agreed to do work or furnish materials which defendant has prevented being fully done, and the like cases in which it was certain that but for the unlawful act or default of the defendant the contract could have been performed, and the labor and expense of the plaintiff in performing it could be calculated from certain data, and consequently his profits upon performance, which may thus not unjustly be made the measure of damages. *Masterton* v. *Mayor of Brooklyn*, 7 Hill, (N. Y.) 61; *Sedgwick on Damages*, 223; *Bingham* v. *Richardson*, 1 Winst., 217.

3. And to cases in which the plaintiff has substantially, al-

though not literally, performed his contract, as in *Ashcraft* v. *Allen*, 4 Ired., 96.

Whatever may be said of such cases, we think that this rule will not apply to a case like the present. It is impossible to say with certainty, that the plaintiff would or could have bought the land at the price at which defendants bought it, and within the time allowed him; and also what would have been his expense and labor in doing so. The owners might have refused to sell at all, or refused except at a price greater than the plaintiff was to receive, or might have died before selling, in which case the contract by its terms was to have no effect. The damages would have to be calculated as under the conditions existing at the time of the breach of defendants' contract, and the success of the plaintiff at that time was subject to contingencies which did not admit of a certain calculation. His anticipated profits were merely precarious and speculative, and it cannot be said with certainty that he has sustained any damage beyond the value of his labor and expense. To give to the plaintiff the full benefit of the defendants' purchase, as if made by the plaintiff, would be to give to him the benefit of the defendants' labor, skill and good fortune without exertion on his part. It may be useful too to observe what damages the defendants could have recovered of the plaintiff in case he had failed to procure a title without the excuse of an act of theirs. They could not have recovered the difference between what they were to pay the plaintiff, and any greater price which they might afterwards have paid. The authorities are that where a vendee has paid nothing, he can, in general recover nominal damages only, upon an inability in the vendor to make title. *Sedgwick on Damages*, 183; *Flurean* v. *Thornhill*, 2 W. Bl., 1078; *Worthington* v. *Warrington*, 8 Man. Gr. & S., 133; *Hopkins* v. *Grazebrook*, 6 Barn. & Cres., 31; *Robinson* v. *Harmon*, 1 Ex., 850; *Allen* v. *Anderson*, 2 Bibb., 415; *Nichols* v. *Freeman*, 11 Ired., 99, does not resemble the case supposed.

In the present case the plaintiff is entitled to recover for his

labor and expense in endeavoring to perform his contract, as upon a *quantum meruit*.

Such we think is the rule established by the modern authorities.   2 Pars. Con., 523.

In *Blanche* v. *Colburn*, 8 Bing., —, the plaintiff had agreed to write a treatise on ancient armor to be published by defendants in a serial publication called the *Juvenile Library*.   Defendants were to pay plaintiff £100 for the work.   The plaintiff had prepared about one half of his work, and had incurred some expense, when defendant abandoned his serial publication, and refused to receive the treatise of plaintiff, or to pay him any part of the compensation.   It was held that the plaintiff was entitled to recover, not the price of the treatise as if he had completed it, but upon a *quantum meruit* for the labor he had done, which the jury had found to be $50.

Similar in principle to this are the numerous cases which hold that where a plaintiff who has been employed for a year, at a yearly sum, has been wrongfully dismissed during the year, he cannot recover the whole year's wages, as if he had served during the whole year, but only for the service actually performed, and in some cases with an addition of damages by reason of inability to find other employment.   The statement doubtingly made in Smith's notes to *Cutter* v. *Powell*, that *perhaps* a servant wrongfully dismissed might wait until the end of the year and recover as upon a constructive service, has not been approved in England or in the United States.   *Goodman* v. *Pocock*, 15 Ad. &. Ell., (2 B.,) 576 ; *Ellerton* v. *Emmens*, 6 Man. Gran. & Scott, 178, (60 E. C. L. R.;) *Woodly* v. *Bond*, 66 N. C., 397 ; *Alges* v. *Alges*, 10 Serg. & Rawle, 235. In this last case the language of GIBSON, J., is so terse as to deserve quoting :

"Here the plaintiff below claimed to recover for the whole time for which he had been employed, on the ground that an act, the performance of which has been prevented by the person for whose benefit it was to be performed, shall, as to him, be taken to have been actually performed.   This holds so far

as to give an action on the contract where actual performance would otherwise have been a condition precedent, but not to create an implied promise to compensate the party as if the act were actually performed." See also *Perkins* v. *Hart*, 11 Wheat., 237.

There was an error in the instructions of his Honor.