Minshall, J.
The action below was brought by the Wellston Coal Company to recover of the Franklin Paper Company $333, the difference between the contract price for certain coal delivered *183 by the plaintiff under a contract claimed to have been wrongfully broken by the defendant, and the market price at the time of the deliveries, with interest. The action is not on the contract, but op what, at common law, would be termed a count in general assumpsit on a quantum valebat.
The facts, about which there is no dispute, are correctly stated in the brief of the plaintiff.
On August 7, 1890, plaintiff and defendant made a written contract by which defendant for the term of one year, agreed to take its entire supply of coal from plaintiff at the rate of $1.90 per ton of 2,000 pounds on the cars at Franklin, Ohio, which after deducting freight, would net the plaintiff $1.00 per ton.
The demand for such coal was greater during . the late fall and winter months of each year, when plaintiff’s business would be active, and less during the spring and summer months, at which times its business would be dull. The sum of $1.00 per ton for the coal was the market price, outside of freight charges, for coal of the kind mentioned in the contract, during the summer of 1890, and at the time the contract was made. Plaintiff and defendant were familiar with the ups and downs of the coal trade, and knew that the market price of such coal would be higher during the fall and winter months; and they both understood that defendant would require for its manufacturing operations during the entire period covered by the contract, a large amount of such coal, which taken by defendant during all the year covered by the contract, would give plaintiff an assured sale for that amount of coal during the dull season. Such contracts for the year’s supply of coal were usually made by manufacturers with coal shippers *184 during the summer; and were advantageous to both parties.
These facts were known to both plaintiff and defendant, who contracted with reference to them; and plaintiff would not have made the contract whereby it agreed to supply coal during the fall and winter months at the contract price, which would be less than the market prices, except for the fact that it would supply the defendant coal at the same price for the balance of the year, when the price would be about the same as the contract price, and the demand then being small, it would not otherwise be able to sell the coal.
During the month of September, 1890, the market price of this coal, outside of freight charges, was $1.05 per ton, and from October 1, 1890, to February 1, 1891, such market price was $1.15 per ton. After February, during the rest of the year covered by the contract, the market price was the same as the contract price. During the period of time from August 1, 1890, to May 13, 1891, when the contract was broken by the defendant, plaintiff furnished defendant, during September and October, 1890, in all, 2,562],- tons of coal, for which it was paid the contract price; while, if the same coal had been sold at the market prices when delivered, plaintiff would have received $333 more for it.
About May 13, 1891, defendant wrongfully broke the contract, and refused to take any more coal from plaintiff. The contract did not bind the defendant to take any specified quantity of coal per month, but the average number of tons per month, taken before the contract was broken, was four hundred and thirty-four and one-fourth tons; and if it had continued to take coal under the contract *185 at the same average number of tons for the balance of May and the months, June and July, the plaintiff would have made a total profit for that time under the contract, of $304.22.
The question is as to the measure'of damages to which the plaintiff is entitled in a case like this. It, as before stated, is not on the contract, but for the value of the coal delivered at the market price, before the contract was wrongfully terminated by the defendant, less what ‘had been paid therefor, i. e., the contract price. The plaintiff requested the court to charge the jury that it was , entitled to recover for the coal delivered prior to / the repudiation of the contract by the defendant, \ its market value when the deliveries were made, ¡ and is not limited to the price specified in the con-1 tract. This the court refused to do, and directed , the jury to find a verdict for the plaintiff for nominal damages only.
The general rule is, that when full performance of a contract has been prevented by the wrongful act of the defendant, the plaintiff has the right either to sue for damages, or he may disregard the contract and sue as upon a quantum meruit for what he has performed. The plaintiff has pursued the latter course; and it seems well settled, both on reason and authority, that he had the right to do so. 2 Sedgwick on Damages, 8th ed., 654; Chamberlain v. Scott, 33 Vt., 80; McCullough v. Baker, 47 Mo., 401; Kearney v. Doyle, 22 Mich., 294; Buffkin v. Baird, 73 N. C., 283; U. S. v. Behan, 110 U. S., 338; Merritt v. Railroad, 16 Wend., 586; Clark v. Mayor of N. Y., 4 Conn., 338.
But it is claimed on the authority of Doolittle v. McCullough, 12 Ohio St., 360, that the contract price must still be the measure of the plaintiff’s *186 recovery. There are many expressions in the opinion in that case that seem +o support this view, and much of the reasoning is to the same effect. But all that is there said must be taken as said with reference to the facts of that case. The rule there stated may be regarded as a proper one in a case where, as in that case, it appears from the claim of the plaintiff, that the breach of the contract by the defendant worked no loss, but a benefit to him, on the ground, as appears, that had he been required to complete the work, he would have suffered a much greater loss; for, if the least inexpensive part of the work could not have been done without loss, it follows that the doing of the remaining part, under the contract, would have resulted in a still greater loss. The action upon a quantum meruit is of equitable origin, and is still governed by considerations of natural justice. Hence, where one has performed labor or furnished material under a contract that is wrongfully terminated by the other party before completion, the question arises whether the party, not in fault, should be confined to the contract for what he did, or to a quantum meruit; and this must depend upon whether the act of the other party in terminating the contract, works a loss or not to him, regard being had to the contract. If it works no loss, but is in fact a benefit, as in the case of Doolittle v. McCullough, there are no considerations of justice requiring that he should be compensated in a greater sum for what he did than is stipulated in the contract. These considerations exercised a controlling influence in the case just referred to. The plaintiff had a contract with the defendant for the making of certain excavations in the construction of a railroad. He was *187 to receive for the entire work eleven cents per cubic yard. He had performed the least inexpensive part of the work, when the contract was wrongfully terminated by the defendant, and. on this part, by his own showing, he had suffered a loss. The proof showed that the performance of the remainder, being hard-pan, would have cost him a great deal more. It was then evident, as the court observed, that he had sustained no loss, but a benefit, from the termination of the contract by the defendant. But in the case before us the facts are very different. They are in fact just the reverse. The contract was for the delivery of coal at' a price generally received during the dullest season of the whole year. The defendant received the coal during the season when the market was above the contract price. He had the benefit of the difference between the market and the contract price; but when the dull season arrived and the advantages of the contract would accrue to the plaintiff, the defendant repudiated it. The difference between the two cases is thus apparent. In the case before us, justice and fair dealing require that the defendant having repudiated the j contract, should pay the market price for the coal / at the time it was delivered; in the former case, i as the repudiation of the contract by the defendant did not enrich him to the loss of the plaintiff, there were no considerations of justice on which the plaintiff could claim, more than the contract price for what he had done under the contract.
The object in allowing a recovery of this kind is not to better the condition of the plaintiff under the contract, were it performed, but to save him from a loss resulting from its wrongful termination by the defendant; or, in more general words, to *188 prevent the defendant from enriching himself at the expense of the plaintiff by his own wrongful act. The real test in all cases of a plaintiff’s right to recover as upon a quantum meruit for part performance of a contract, wrongfully terminated by the defendant, depends upon the consideration whether the defendant is thereby enriched at the loss and expense of the plaintiff; if so, then the law adds a legal to the moral obligation, and enforces it. Keener, Quasi Contracts, Í9; and ch. V. passim. And while the action is not on the contract itself, yet it is so far kept in view as to preclude a recovery bj7- the plaintiff where he would necessarily have lost more by performing the contract, for the .consideration agreed, upon, than he did by being prevented from doing so.
In this view the case of Doolittle v. McCullough was rightly decided, and, when limited to its facts, may well stand as authority in all similar cases.
Judgment of the circuit court and that of the common pleas reversed, and cause remanded for a new trial.