WILLIAMS NEYLAND V. WILLIAM M. NEYLAND.

See this case for a discussion of account stated, with reference to the certainty necessary in pleading, and to [the defence of the Statute of Limitations.

Where the plaintiff counts upon a parol statement of accounts, he must set forth the original accounts by exhibit, or otherwise, with such circumstantiality as to apprise the defendant of the particular accounts adjusted, that it may be seen by defendant, whether the action is subject to the bar of the Statute of Limitations, and in order that defendant may be able to plead specially any objections he may have to urge to the statement of the account.

Appeal from Jasper. Tried below before the Hon. Archibald W. O. Hicks.

The defendant proved payment of the $40. Defendant pleaded that the horse, for the value of which the plaintiff sued, was seized by writ of attachment at the suit of this defendant in the Parish of Calcassieu, in Louisiana, and that the title to said horse was then in controversy between plaintiff and defendant in the Court of that Parish, from which said attachment issued. Plaintiff proved that he loaned the horse, the value of which was variously estimated by the witnesses, from $75 to $150, to defendant to ride to the said Parish of Calcassieu, and that plaintiff returned without the horse, and said he had had him attached at his own suit against the plaintiff in said Parish. The Court instructed the jury, that the admissions of the parties were evidence, to which they might attach such credit as they thought they were worth. The jury found for defendant. Motion for new trial overruled, &c. The facts as to another branch of the case are stated in the Opinion.

*H. C. Hicks*, for appellant.

*R. S. Walker*, for appellee, to the insufficiency of the peti-

tion, as to the account stated, cited Mays v. Lewis, 4 Tex. R. 38 ; Mason v. Kleberg, Id. 85 ; Carlton v. Glover, Id. 151.

HEMPHILL, CH. J. This was an action by the plaintiff in error against the defendant, William M. Neyland, for the recovery of three demands, viz : one for seven hundred and fifteen dollars ; one for forty dollars ; and a third for the value of a horse, viz : one hundred and fifty dollars.

The petition was filed on the 14th February, 1853, and the averments in relation to the first claim were to the effect, that about the 12th day of March, 1851, the defendant at, &c., accounted with the plaintiff, of and concerning divers sums of money, from the plaintiff to the defendant before that time due and owing, and then in arrear and unpaid ; and upon such accounting the defendant was found to be in arrear and indebted to the plaintiff in seven hundred and fifteen dollars, and being so found indebted and in arrear, he, the said William M. Neyland, acknowledged the same to be just, and the said amount, so accounted and stated, was, on the day and year aforesaid, entered in writing in a certain book which your petitioner avers and believes to be in possession, at present, of the defendant ; and the defendant then and there undertook and promised to pay the said sum of seven hundred and fifteen dollars.

The defendant demurred to the petition ; and so far as the same averred the statement and adjustment of accounts, leaving the defendant in arrear the said sum of seven hundred and fifteen dollars, he excepted specially that the petition did not allege specially of and concerning what items the defendant did account with plaintiff, nor when the dealing took place, nor when any liability or cause of action accrued to plaintiff ; that the petition does not furnish any bill of particulars of the account or dealings accounted with plaintiff, nor any bill of particulars of the divers sums of money alleged to have been found in arrear and unpaid, and does not allege by bill of par-

ticulars or otherwise, for what or when said sums of money became due ; that it does not allege any consideration passing from the plaintiff to defendant, as an inducement to a renewal of said accounts or liabilities ; that it does not allege, in relation to the writing entered in the book, any fact which raises any obligation on the part of the defendant to pay any amount, nor that the defendant made any entry in writing in said book, &c., &c.

The demurrer was sustained to this first count. The record does not show the special ground on which the Court below ruled. The plaintiff in error, in his brief, asserts that the exception was sustained on the ground that the count was obnoxious to the Statute of Limitations. The defendant, in his brief, urges some of the various grounds assumed by him in the exception, in support of the ruling of the Court. We are of opinion that the count or the averment of the account stated, was demurrable for the want of sufficient certainty ; and as this was but a parol statement of accounts,—for it is not alleged that it was signed by the defendant,—a bill of particulars or a copy of the various accounts alleged to be stated and adjusted, should have been set out in the petition. It is admitted that the petition pursues almost literally the form of count in *indebitatus assumpsit* on an account stated, as found in Chitty and other works on Pleading, and is even more full than the form as prescribed by the late rules in the English Courts ; yet, under our system of pleading, which requires a statement of the facts constituting the plaintiff's cause of action, so full and ample as to enable the defendant to ascertain the true grounds of the plaintiff's claim, and to set up at once such matters as he may have in defence to the claim of the plaintiff as it actually exists, the general, indefinite statement of there having been an accounting is insufficient, and not such a precise and full exposition of the grounds of the plaintiff's demand, as could be reasonably required by the defendant. I speak now of a parol statement of accounts, for if the settle-

ment were in writing, signed by the party to be charged thereby, the plaintiff could not be required to exhibit in his petition more than the copy or substance of the written acknowlegment of the balance due. That there is reason and justice in the rule that the plaintiff, when he claims under a verbal statement of accounts, should exhibit the accounts pretended to be adjusted, will, it is conceived, be manifest from the consideration of the nature and legal effect of an account stated, and of the defences which may be urged against its obligation or correctness, in whole or in part.

An account stated is defined by Lord Mansfield, in Trueman v. Hurst, 1 Term Rep. 40, to be an agreement by both parties that all the articles are true; that this was formerly conclusive, but a greater latitude has of late prevailed, in order to remedy the errors which may have crept into the account in surcharging the items. In argument it was said by the attorney for the defendant in that case, that the nature of an account stated was this : the parties meet, discuss their several claims and strike a balance, at which time either party is at liberty to destroy the vouchers, &c. No doubt this is the true nature of the account stated, viz : that there should be mutual demands, which should be discussed and set off against each other,—and that the balance struck and agreed upon, should remain the debt due, and for which the defendant should be liable on his express or implied assent to the same. But it seems that an account stated has a much larger scope than the adjustment of reciprocal or cross demands ; that it is not necessary there should be cross demands, but that a count upon an account stated, will be supported by proof of an acknowledgement by defendant, that a certain sum was due plaintiff on a single debt or transaction. (13 East, 249.) Thus, an admission by defendant that so much was agreed to be paid to the plaintiff for the sale of standing trees, made after the trees had been felled and taken away by the defendants, will support a count upon account stated. (Chitty on Contracts, 567.)

Neyland v. Neyland.

It appears that an account stated, though at one time held conclusive, and that the balance could not be disputed, yet, as said by Lord Mansfield in the case of Trueman v. Hurst, *supra,* a greater latitude has of late prevailed, in order to remedy the errors in the accounts; and the statement of accounts is now regarded as but presumptive evidence against the party admitting the balance. In Hart. v. Perkins, 11 Wheaton, 237, 256, it is said that a settled account is but *prima facie* evidence of its correctness. It may be impeached by proof of unfairness or mistake in law or fact; and if it be confined to particular items of account, it concludes nothing in relation to other items not stated in it. (2 Mason, 541–561.)

Under the Common Law system of pleading, these errors may be shewn and corrected under the general issue. (2 Greenleaf on Ev. Sec. 128.) This is true even under the later rules of pleading in England; for though it is laid down in some of the books, that the general issue of non-assumpsit will put in issue only the fact of the statement of the account, and though this was held in the Court below, in Thomas v. Haukes, 8. M. & W. 140; yet, in the Court above, it was said the true issue was, whether the defendant was indebted as had been alleged; and to show that he was not so indebted, he might prove that the account was not correct. But could such error be exposed and corrected under the general issue, as known to our system of pleading? The plaintiff alleges, for instance, that the defendant is indebted to him in a certain sum for money found to be due from defendant to plaintiff, upon an account stated, and in consideration thereof, promised payment. The defendant denies his allegations. This would certainly, under our system, put in issue only the facts of there being such an accounting, and that such balance was found due as alleged. If the defendant wished to shew mistake, error in fact or in law, in the original accounts, or to dispute the items, he must allege the facts, to be set up by him, with some degree of certainty. But how can this be done,

when he is not apprised by the plaintiff of the particular accounts which were stated, and upon which the alleged balance is found to be due ?  He must indulge in hypothetical conjectures, that, if this or that accounting be the one charged by the plaintiff in his petition, he then has this or that special defence to the whole claim, as invalid in law, or to the whole, or some portion thereof, as erroneously or unjustly charged against him.  It would manifestly be unfair to deprive the defendant of the power to prove and correct errors under the general issue, and require the mistakes to be generally or specially pleaded, and yet allow the plaintiff to state his cause of action so generally, that the defendant cannot certainly know that his defences apply to the accounting alleged in the petition, or some other accounting which may be held by the plaintiff in reserve for another action.  For in law, the accounting is not identified by the date alleged, as it is not material when the admission of the sum due was made, whether before or after action brought, if it be proved that a debt existed before suit, to which the conversation related ; (2 Greenleaf, Ev. Sec. 128 ;) nor by the sum, as that need not be proved precisely as laid in the declaration.  Such a course of pleading would give the plaintiff every advantage.  It would allow him, after ascertaining the defences the defendant has set up to the supposed case of the plaintiff, to shift his ground and prove some other accounting than the one conjectured by the defendant. Under our system, defendants are required to plead all defences of law and fact at the same time, and in one answer. The plaintiff is apprised of the grounds upon which the defendant relies.  For instance, the defendant in this case alleges that, if there ever was any such indebtedness as charged in the petition, it accrued for the expenses of his education, maintenance, &c., while he was under twenty-one years of age, and which the plaintiff, as his parent, was bound to allow and furnish him.  As the plaintiff is not bound to prove the exact sum nor day of accounting, as stated, he has it in his power to

Neyland v. Neyland.

produce some other accounting, for some indebtedness of the defendant accruing after he was twenty-one years of age, and thus exclude the defendant from the defences set up to the claim as supposed, and also from any special defences which he might have set up against this last claim, had he supposed it was the foundation of the action.

At Common Law the plaintiff and defendant are placed on the same footing of knowledge, or rather ignorance, by the pleadings. The plaintiff alleges a general indebtedness, in a particular sum, on an account stated. The defendant does not know what the accounting is, what sum the plaintiff may prove, or on what day the admission was made by the defendant. The latter pleads that he did not undertake, in manner and form as alleged. The plaintiff is not apprised what defences may be set up under this general plea, what mistakes may be set up at the trial, or items disputed. Where such a wide scope is given to the evidence under the general issue, there is not the same reason why the items of the original account should be exhibited by the plaintiff, that there is under our system, which excludes the defendant from special defences, unless specially pleaded.

But again ; where the statement of accounts has been by parol, the Statute of Limitations may or may not be a valid defence against the whole or some of the items in the account. It is important therefore, that the account be exhibited, that the defendant may know whether the claim be subject to the plea.

The balance due on a stated account is recoverable on the ground of the express or implied promise of payment, and this promise, though implied or by parol, was sufficient before the Act of Geo. IV, C. 14, commonly called Lord Tenterden's Act, to take the original claim out of the Statute of Limitations ; or in other words, it was evidence of a new and continuing contract. But that Act declared that no acknowledgment or promise by words only, shall be deemed sufficient evi-

dence of a new and continuing contract to take the case out of the Statute of Limitations, except the same be in some writing signed by the party chargeable thereby ; and it was also enacted in substance, that payment of a part of the debt should have the effect of taking the debt out of the operation of the Statute. I shall not attempt to review fully the cases decided in England since the passage of this Statute, with reference to the question immediately under consideration. It will suffice to cite the substance of a paragraph from Angell on Limitations, Chap. 25, Sec. 5, p. 302, and which is in substance the same as a paragraph found in Browne on Actions, p. 66, (Law Library, 45.) The paragraph also refers to the doctrine in relation to the last item in mutual accounts, which is distinct from that in relation to stated accounts, but has some connection with reference to the question of Limitations.

" Before the Statute 9 Geo. IV, if there were cross accounts, with any item on either side within six years, that was a bar to the Statute, because every new item and credit implied an admission of the justice of the accounts, and a promise sufficient to take it out of the Statute. But as the Act requires either a part payment, or an acknowledgment in writing, signed by the party chargeable, it is now well established that no such mutual and reciprocal, or cross accounts, as such, are of any avail, unless in writing and signed by the party charged, to save the Statute, either on the ground of there being an acknowledgment of the debt, or as amounting to evidence (by way of admission) of part payment, (2 Crompton, Mees. & Ros. 45 ;) as they are only available when they come within the exception of merchants' accounts, and therefore it is that even a parol statement of accounts, made within the six years, will not bar the Statute, if the original cause of action be more than six years old, as such account stated amounts merely to a promise to pay the old debt, which should be in writing, according to the provision of the Act ; and such account stated cannot of itself be sued upon as a new promise,

for want of a consideration to support it. (Tarburch v. Bingham, 2 Mees. & Wel. 2 ; 4 Mees. & W. 325 ; 5 Bingham, N. C. 455.) Though if the account stated, or any other subsequent promise by parol were upon a new consideration sufficient to support it, it would amount to a new and independent contract, and might be declared on accordingly."

It may be observed here, that the first portion of this paragraph, to the effect that the items in a cross or reciprocal account will not, since the Act of 9 Geo. IV, (under the idea of an implied promise,) save the account from the effect of the Statute of Limitations, is in contradiction to that portion of the fourth Section of the 14th Chapter of Angell, which declares that in England the law as expounded in Catlin v. Skoulding has undergone no change. This statement, that the law has not changed, is evidently an error, and has perhaps been corrected in the new edition of this work, as some of the authorities cited at the close of the Section show that the law had changed.

But to the point immediately on hand, viz : that a parol statement of accounts will not bar the Statute if the original cause of action were barred. It seems that there has been some modification of this rule, by later decisions. The doctrine appears now to stand thus, viz : the mere parol statement and promise to pay a debt will not have the effect to bar the Statute. Where the items of the account are barred and there are not mutual or cross accounts between the parties, and they meet and go into the account and strike the balance, an action will not lie on account stated to recover such balance. (Ashby v. James, 11 Mees. & Wel. 542 ; Jones v. Ryder, 4 M. & W. 32, overruling Smith v. Forty, 4 C. and P. 126 ; Chitty on Contracts, 8th Am. edition.)

Where A has an account against B, some of the items of which are more than six years old, and B has a cross account against A, and they meet and go through both accounts, this amounts to an agreement to set off B's claim against the earlier

items of A's, and out of this agreement a new consideration arises for the payment of the balance, which takes the case out of the Statute of Limitations. (Ashbey v. James, 11 Mees. & Wel. 542.) In this case, cited, it was objected below to the evidence, that it amounted to a mere parol acknowledgment by defendant, of the debt, which by 9 Geo. IV, C. 14, would not take the case out of the Statute. But the evidence was received, and on rule for a new trial, the Judges expressed themselves substantially as follows:

Lord Abinger, C. B., said that Lord Tenterden's Act did not apply to the fact of an account stated, where there were items on both sides. This was not an acknowledgment by promise or words only; it is a transaction between the parties, whereby they agree to the appropriation of the items on one side, item by item, to the satisfaction *pro tanto* of the account on the other side. The Act never intended to prevent parties from making such appropriation.

Alderson, B., said, The Courts have never laid it down that an actual statement of a mutual account will not take the case out of the Statute of Limitations. They have indeed determined that a mere parol statement of, and promise to pay, an existing debt, will not have that effect; because to hold otherwise would repeal the Statute. The truth is that going through an account with items on both sides, and striking a balance, converts the set-off into payments. The going through an account where there are items only on one side does not alter the situation of parties, or constitute any new consideration. Here the striking of a balance between the parties is evidence of an agreement that the items of the defendant's account shall be set off against the earlier items of the plaintiff, leaving the case unaffected by either the Statute of Limitations or set-off.

Rolfe, B. An actual settlement is not "an acknowledgment by words only." It is a transaction between the parties, out of which a new consideration arises for a promise to pay the balance.

The Statute of Limitations of this State has a provision similar to that of 9 Geo. IV, to the effect that an acknowledgment in writing, signed by the party to be charged thereby, can alone take the case out of the operation of the law; while there is no provision in our Statute, as to the effect of payment. It is not material in this case to express any opinion as to the decision in Ashby v. James, or whether it can be entirely sustained under our Statute. Most certainly its equity and justice cannot be questioned.

From the law as now established by these decisions, it appears that though some accounts stated may not be barred by the Statute from the fact that the items in the original account were subject to the bar; yet, there are other accounts stated, which are no bar to the Statute of Limitations, provided the original account be concluded by the Statute.

Under our system of pleading, the plaintiff, when he counts upon a parol statement of accounts, should set forth by exhibit or otherwise the original accounts, that it may be seen by the defendant whether the action be subject to the bar of the Statute, and that he may plead his defence or not, as he may be advised.

Upon the various considerations to which we have referred in the foregoing portion of this opinion, we must hold that a plaintiff, when he relies upon a parol settlement of accounts, must set forth the original accounts with such circumstantiality as will apprise the defendant of the particular accounts adjusted, that he may be enabled at once to plead such defences as he may have in the cause. This petition was defective in this particular, and there was no error in sustaining the exception.

But the judgment must be reversed on the ground that there was no sufficient evidence to authorize the jury to find against the plaintiff, with respect to his claim for the value of the horse loaned to the defendant. The proof was clear that he had been borrowed and never returned by defendant; and

the only defence offered by defendant consisted of his admissions or statements, that he borrowed the horse to ride to the parish of Calcassieu in the State of Louisiana, and that while there he had the horse attached at his own suit against the plaintiff, the man from whom he had borrowed the horse. It can scarcely be contended that the defendant, by this species of artifice, could deprive the plaintif of his horse or his value, or that he would not be responsible for such loss as the plaintiff may have sustained by the sale of the horse under attachment, if he was sold at all under the process. But at all events, there is no legal or sufficient proof that there was any such attachment issued by a Court of competent jurisdiction, or that the horse was attached. Judgment reversed and cause remanded.

· Reversed and remanded.

ROBERTS, J., did not sit in this case.