WATSON v. DODSON.

(Court of Civil Appeals of Texas. Austin. Nov. 22, 1911. Rehearing Denied Jan. 3, 1912.)

1. WITNESSES (§ 165*)—TRANSACTION WITH PERSON SINCE DECEASED—RECORDS.

In an action by an administrator of a cestui que trust against the trustee for an accounting, the trustee's book of account, showing receipts and payments of money for and on account of the cestui que trust, was inadmissible, where it was necessary for the trustee to prove the correctness of the book by his own evidence.

[Ed. Note.—For other cases, see Witnesses, Cent. Dig. § 687; Dec. Dig. § 165.*]

2. TRUSTS (§ 332*)—ACCOUNTING—UNILATERAL MISTAKE—CONCLUSIVENESS.

An instruction that the jury could not allow the trustee any payment or credit not shown by an account rendered, unless the same was omitted by mutual mistake of both parties, was erroneous.

[Ed. Note.—For other cases, see Trusts, Dec. Dig. § 332.*]

3. REFORMATION OF INSTRUMENTS (§ 19*)—UNILATERAL MISTAKE.

An executory contract will neither be enforced nor reformed where a unilateral mistake is shown, since, under such circumstances, the minds of the parties never met; and to reform the contract in accordance with the views of the party who made the mistake would be to make a new contract.

[Ed. Note.—For other cases, see Reformation of Instruments, Cent. Dig. §§ 74–78; Dec. Dig. § 19.*]

4. ACCOUNT STATED (§ 8*)—MISTAKE—ESTOPPEL.

An account stated presupposes that the parties have gone over each and all the items, and have agreed thereto, there being an implied contract that the party against whom the bal-

ance is found will pay such balance, the account being prima facie evidence of its correctness, and the burden resting upon the party disputing the same to show mistake; but where no estoppel is involved neither party is precluded from showing a mistake, though not mutual.

[Ed. Note.—For other cases, see Account Stated, Cent. Dig. §§ 50–56; Dec. Dig. § 8.*]

5. TRUSTS (§ 332*)—TRUSTEES—ACCOUNTING.
Where a trustee advanced money for the purchase of land for a cestui que trust, and thereafter rendered an account of the moneys received and paid out, in which the amount paid for the land was not included, that fact did not preclude the trustee from claiming a credit, in his final account, for the amount so paid, without reference to whether it was omitted from the account rendered by mistake or otherwise.

[Ed. Note.—For other cases, see Trusts, Dec. Dig. § 332.*]

6. TRUSTS (§ 305*)—TRUSTEES—ACCOUNTING.
Where, in an action against a trustee for an accounting, it appeared that the cestui que trust had no separate property, and that her only property was her interest in her husband's estate, amounting to $8,469, and there was also evidence that she had received, during her lifetime, from the trustee, either in cash or in property purchased for her benefit, $449.60 more than she inherited from her husband's estate, the court erred in refusing to charge that if the jury believed that she received from defendant money and land sufficient to pay for her share in her husband's estate they should find for defendant.

[Ed. Note.—For other cases, see Trusts, Dec. Dig. § 305.*]

7. TRUSTS (§ 332*)—TRUSTEES—ACCOUNTING —ACCOUNT RENDERED.
A trustee executed and delivered to his cestui que trust a certificate that he had received for management from her "the following amounts of money to be loaned," etc., followed by a recital of several specified sums, amounting in all to $6,303.49, and that he had advanced to her three specified sums, in all amounting to $3,518.60, followed by a statement that it was a correct account, except the interest that had accumulated on the money that the trustee had. Held, that such instrument should be construed only to mean that at its date the trustee had received the sums specified, and had paid out those stated, and was not to be construed as a statement that he had paid out no other sums, or was entitled to no other credits.

[Ed. Note.—For other cases, see Trusts, Dec. Dig. § 332.*]

8. LIMITATION OF ACTIONS (§ 103*)—TRUSTS —ACCOUNTING—ACCRUAL OF RIGHT OF ACTION.
Where defendant received money in trust, to be loaned pursuant to a continuing trust, limitations would not run against his liability to account and to pay over the balance until he had repudiated the trust, and such repudiation had been brought home to the cestui que trust.

[Ed. Note.—For other cases, see Limitation of Actions, Cent. Dig. §§ 506–510; Dec. Dig. § 103;* Trusts, Cent. Dig. § 570.]

9. LIMITATION OF ACTIONS (§ 102*)—TRUSTS —STATED ACCOUNT—ACCRUAL OF RIGHT OF ACTION.
The statement of an account between a trustee and a cestui que trust did not start the running of limitations against the trustee's duty to account, nor in the absence of a demand that he pay over the balance, so long as

there was an agreement that the trust should continue.

[Ed. Note.—For other cases, see Limitation of Actions, Cent. Dig. §§ 494–505; Dec. Dig. § 102.*]

10. LIMITATION OF ACTIONS (§ 103*)—ACTION AGAINST TRUSTEE — LIMITATIONS — MINGLING TRUST FUNDS — REPUDIATION OF TRUSTS.
Where funds were paid over to defendant in trust to be loaned, the fact that he mingled such funds with his own, and loaned the same in his own name, was insufficient to show the repudiation of the trust; there being nothing to indicate that the cestui que trust was informed of any fact that would induce her to believe that defendant was no longer acting as trustee.

[Ed. Note.—For other cases, see Limitation of Actions, Cent. Dig. §§ 506–510; Dec. Dig. § 103.*]

11. PAYMENT (§ 38*)—APPLICATION BY DEBTOR.
Where money was paid to defendant in trust to loan the same, and certain notes were given him for collection, after which he paid $2,000 for the purchase of land for the cestui que trust, he was entitled, at the time of making such payment, to direct whether it should be credited against the funds which he held in trust to be loaned, or on the amount collected on the notes.

[Ed. Note.—For other cases, see Payment, Cent. Dig. §§ 99–103; Dec. Dig. § 38.*]

12. PAYMENT (§§ 39, 45*)—CREDIT—RIGHT TO APPLY.
Where money was paid to defendant in trust to be loaned, and he was also given certain notes to collect for his cestui que trust, and, having thereafter paid out $2,000 for her in the purchase of land, did not elect at the time whether the amount should be applied on the collections or on the trust fund, the cestui que trust was then entitled to apply the same to the amount due on the notes; and, in case neither party made such an application at the time of payment, the law would apply the payment to the amount first due, which would be the money received to be loaned.

[Ed. Note.—For other cases, see Payment, Cent. Dig. §§ 104–114, 124; Dec. Dig. §§ 39, 45.*]

13. PRINCIPAL AND AGENT (§ 64*)—COLLECTIONS—PAYMENT OF FUND.
Where notes were given to defendant to collect, without any agreement that defendant was to retain the amount collected and reloan the same, it was the duty of defendant to pay over the amount so collected within a reasonable time.

[Ed. Note.—For other cases, see Principal and Agent, Cent. Dig. §§ 113–122; Dec. Dig. § 64.*]

14. PAYMENT (§ 76*)—APPLICATION OF PAYMENTS—QUESTION FOR JURY.
Defendant received certain money to be loaned, and afterwards also received from the same person certain notes for collection, without any agreement that the proceeds of the collections should be reloaned. Thereafter defendant purchased land for his cestui que trust, paying $2,000 therefor; but there was no agreement or direction by either party as to whether the consideration should be applied on the trust fund, or on the amount collected from the notes. Held, that the presumption that the payment would apply to the oldest debt did not necessarily obtain as a matter of law, and that whether it was intended to apply on the notes or on the trust fund was for the jury.

[Ed. Note.—For other cases, see Payment, Dec. Dig. § 76.*]

15. TRUSTS (§ 305*)—SETTLEMENT—LACHES—PRESUMPTION—LAPSE OF TIME—QUESTION FOR JURY.

In an action by the administrator of a cestui que trust against the trustee for an accounting, whether the lapse of time since the last transaction between them, which was 10 years before the cestui que's death, was sufficient to raise a presumption of full settlement was for the jury.

[Ed. Note.—For other cases, see Trusts, Dec. Dig. § 305.*]

16. TRUSTS (§ 219*)—MANAGEMENT OF ESTATE—INTEREST.

Where money was paid to a trustee to be reloaned, he was not chargeable with interest on the fund, but was only liable for such interest as he received on the money when loaned.

[Ed. Note.—For other cases, see Trusts, Cent. Dig. §§ 314-317; Dec. Dig. § 219.*]

Appeal from District Court, Palo Pinto County; W. J. Oxford, Judge.

Action by Adam Parker, as administrator of the estate of Pallie Watson, continued after the death of Parker by D. S. Dodson, administrator de bonis non, against F. M. Watson for an accounting. Judgment for plaintiff, and defendant appeals. Reversed and remanded.

See, also, 121 S. W. 209.

This suit was originally instituted November 8, 1905, by Adam Parker, administrator of the estate of Pallie Watson, who died December 5, 1904, against F. M. Watson, as trustee, for an accounting and to recover a balance claimed to be due from said F. M. Watson to Pallie Watson at the time of her death. Said Parker has died since the institution of this suit, and D. S. Dodson was appointed administrator, and made party plaintiff herein, in lieu of said Parker. Recovery was sought on the following instrument:

"Aledo, Texas, Oct. 24, 1890.

"This is to certify that I have received for management of Pallie Watson the following amounts of money, and to be loaned at the best of my judgment:

| | |
|---|---|
| March 25, 1888, to cash | $ 800 00 |
| Aug. 20, 1888, to cash | 746 25 |
| April 15, 1889, to cash | 1,478 00 |
| Jan. 1, 1890, to cash | 2,147 44 |
| May 1, 1890, to cash | 1,131 80 |
| Total amount | $6,303 49 |

—and have advanced to her the following amounts:

| | |
|---|---|
| July 1, 1888, bill of grub at old farm | $ 12 85 |
| July 9, 1889, cash | 566 50 |
| July 20, 1890 | 2,939 25 |
| Total amount advanced to Pallie Watson | $3,518 60 |

"This is a correct amount [account] except the interest that has accumulated on the money I have.

"[Signed]	F. M. Watson."

And also for money collected by said Watson on notes delivered to him for collection, for which he executed the following receipt:

"May 5, 1890.

"Received of Pallie Watson for collection ten certain notes, in the following amounts and against the following parties: A. J. Ball, for $54.25 and interest; E. J. Canifax, for $125 and interest; W. C. Dunlap, for $260 and interest; W. J. Fawks, for $84.50 and interest; Mrs. M. S. Ross, for $910 and interest; J. M. Abbott, for $121.87 and interest; Bob Ellis, for $40.25 and interest; Mrs. S. E. Pierce, for $195 and interest; J. W. Brown, for $45.60 and interest; S. Walker, for $120.08 and interest."

The petition alleged that the amount due Pallie Watson, as shown by the receipt above set out, as well as the amount collected on said notes, which is alleged to be in the aggregate sum of $2,040.71, was not paid to Pallie Watson during her lifetime, except the sum of $2,000 of the amount so collected by appellant on said notes, and that the full amount shown by said receipt, and $40.71 balance due on said collection, is still due and owing. Said petition further alleged that defendant had received, on the ——— day of December, 1890, proceeds of the sale of a certain lot in Alvarado, aggregating $550, and the proceeds of a judgment against John W. Ross, aggregating $728.24, one-fifth of said amounts being the property of said Pallie Watson, by reason of which appellant became indebted to said Pallie Watson in the further sum of $255.65.

Appellant in addition to the general issue, pleaded a mistake in the instrument of October 24, 1890, above set out, in that he should have been credited in said statement with $800 in payment for what was known as the "Price Place," and the sum of $2,600 paid for what was known as the "W. G. Ketchum Place," alleging that said places were paid for by money in his hands belonging to said Pallie Watson, at her instance and request, and that said places were accepted by her. Defendant further pleaded payment of $2,000 on May 6, 1893 for what was known as the "McConnell Place," which he alleged was purchased for said Pallie Watson for the sum of $2,000, at her request, and that she accepted said place. Defendant pleaded other small payments, and also pleaded the statutes of limitation of four and ten years, and also laches and stale demand. He further pleaded a full settlement with Pallie Watson in her lifetime.

The jury returned a verdict in favor of appellee for the sum of $3,216.25, principal, with interest on same from October 24, 1890 to July 14, 1891, at 8 per cent., and from that date to date of trial at 6 per cent.

This is the third appeal in this case. See 50 Tex. Civ. App. 616, 111 S. W. 771, and 121 S. W. 209. On the first appeal, this case was reversed on account of the error of the court in excluding from the jury deeds offered by defendant to the Price place and to the Ket-

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key No. Series & Rep'r Indexes

chum place. On ·the second appeal, this cause was reversed for error in refusing to allow plaintiff to testify fully as to the transactions between himself and Pallie Watson, deceased; he having been called by defendant to testify to said transactions in part.

W. H. Gross, McCall & McCall, and Stephens & Miller, for appellant. F. O. McKinsey, for appellee.

JENKINS, J. (after stating the facts as above). [1] 1. Upon this trial the appellant proved by himself that a certain book or ledger which he held in his hand was kept by him in the course of his dealings with Pallie Watson, and that the entries of the various items of cash and property charged therein against Pallie Watson were made by him at the time of such transactions, as shown by said book, and that said book was correctly kept. No objection was made to this evidence. Appellant thereupon offered the page of the book showing said accounts, which showed various items of cash and property, stating the value thereof, charged against Pallie Watson from March 30, 1888, to January 6, 1890. The appellee objected to this account, for the reason that Pallie Watson was dead, and appellant was prohibited by law from testifying as to transactions between himself and the said Pallie Watson. This objection was sustained, and appellant assigns error thereon.

Appellant concedes that appellee might have objected to his testimony in proving up said book, but contends that the same having been proven without objection that it was admissible in evidence. We do not agree with this contention; but, even if appellant was right as to this matter, we do not believe it would be ground for reversal, inasmuch as it is reasonable to assume that upon another trial appellee would object to such preliminary proof, and the result would be the same; that is to say, the account would be excluded.

[2, 3] 2. Appellant assigns error as follows: "The court erred in that portion of his charge wherein he stated as follows: 'Now, if you believe from the evidence in this case that, prior to the execution of the paper, dated October 24, 1890, exhibited in evidence before you, defendant paid or was entitled to a credit on said paper for $800, the cost of the Price lot, and for $2,600, the price of the Ketchum land, or for either of said sums, and that, by mutual mistake of defendant and said Pallie Watson, said sums of money, or either of them, were omitted from said paper or statement, then you will allow the defendant credit for such item or items as you will find from the evidence was so omitted by mutual mistake of both parties to said transaction, but you will not allow any such payment or credit, unless the same was omitted by mutual mistake of both parties to said transaction.'" We hold that the latter part of this charge is affirmative error, for which this case must be reversed. Upon the first appeal of this case, the Court of Civil Appeals, Second Supreme Judicial District, speaking through Mr. Justice Speer, after holding that the petition in this case was a sufficient allegation of mutual mistake, said: "While it is true, as contended by appellee, that a unilateral mistake will not relieve appellant from his contract, it is equally true that if the credits contended for were omitted from the settlement between appellant and Pallie Watson by mutual mistake, and he has pleaded that fact, he should be allowed to prove it." As the only issue before the court at that time was as to whether or not the pleading was sufficient to allege a mutual mistake, the remark of the court, above quoted, is dictum. We do not understand that the question of unilateral mistake could arise with reference to a stated account. The doctrine of unilateral mistake is applicable to executory contracts. In such case the court will not enforce the contract, because to do so would be to enforce a contract which the parties never made. If there was a mistake made by one of the parties of which the other knew nothing, then the minds of the parties never met, and .there would be no contract to enforce. On the other hand, in such case the court will not reform the contract in accordance with the views of the party who made the mistake, because so to do would be to make a contract which the other party never agreed to. In such cases the court will refuse to enforce the contract, because, in fact, no contract was made.

[4] We understand the doctrine with reference to stated account to be this: Such account presupposes that the parties have gone over each and all of the items, and have agreed thereto; and there is an implied contract that the party against whom the balance is found will pay such balance. Such stated account is prima facie evidence of its correctness, and the burden rests upon the party disputing the same to show mistake. Where an account is in writing, and has been itemized and agreed to, the evidence ought to be very strong to overcome the presumption that it is correct; but, where no doctrine of estoppel in pais is involved, a party is not precluded from showing a mistake in such account. The mistake in such case need not be mutual. Neyland v. Neyland, 19 Tex. 427; Fox v. Sturm, 21 Tex. 409; Railway Co. v. Snelling, 59 Tex. 118; Elliott on Evid. § 1609; Conville v. Shook, 144 N. Y. 686, 39 N. E. 405; Eddie v. Eddie, 61 Ill. 134; Perkins v. Hart, 11 Wheat. 237, 6 L. Ed. 463; Bank v. Honeyman, 6 Dak. 275, 42 N. W. 771.

In Neyland v. Neyland, supra, the court said: "The statement of accounts is now regarded but prima facie evidence against the party admitting the balance. * * * It may be impeached by proof of its unfairness

or mistake in law or fact; and if it be confined to particular items of account it concludes nothing in relation to particular items not stated in it." In Fox v. Sturm, supra, it is said: "If any mistake or incidental omission had been made in making out the account, it would be capable of explanation, like any other omission in writing. It does not operate as an absolute estoppel." In Railway Co. v. Snelling, supra, the court said: "A stated account is not conclusive between parties, but if there has been any mistake * * * a court of equity will not suffer it to be conclusive between the parties, but will allow it to be opened and re-examined." Elliott (section 1609) states: "It has been held, however, that, in order to impeach an account stated for errors or mistakes, it is not necessary they should be mutual." As above stated, an examination of the authorities with reference to unilateral mistakes will be found not to apply to cases of stated accounts.

The charge of the court, above quoted, forbade the jury to credit appellant with the said sum of $800, or of $2,600, which items were not included in the account sued on, unless their omission was by reason of the mistake of Pallie Watson, as well as that of appellant. This was very material error, in that the evidence shows that the said Ketchum place was paid for by appellant for Pallie Watson, at her request, and that she became the owner of said place. Appellant was thereby deprived of a credit of $2,600, to which he was entitled under the evidence, as we understand it.

2. Appellant contends, not without reason, that the account above set out is not a stated account, in that it does not purport to be a full statement of all transactions between the parties up to that date. It will be observed that, while the items on each account are totaled, that no balance is struck in said account; and it also shows upon its face that it is not a full statement, in that it excepts the interest that has accumulated on the money then in the hands of appellant, which amount of interest is not stated. This account does not fully come up to the definition of a stated account in the standard authorities; but we deem it unnecessary to pass upon the point as to whether or not it is a stated account, for the reason that we hold that the effect is the same in either event; that is, that appellant will be permitted to surcharge said account by showing the omission of items therefrom. Such omission is rendered reasonable by the suggestion made by appellant's counsel that the instrument set out was only a statement as to cash received by appellant and cash paid by him to Pallie Watson, and that, inasmuch as the $2,600 was not paid to Pallie Watson, but was paid to Ketchum for her, they did not deem it necessary to include the same in said statement, especially as the deed itself showed the amount paid to Ketchum, and the undisputed evidence is that said amount was paid for Pallie Watson at her request. Appellant further suggests that it is immaterial as to whether or not Pallie Watson knew that the price of said Ketchum land was included in the statement rendered to her, and herein sued on, for the reason that she knew that she had received the benefit of the price paid to Ketchum for said land, and that upon final settlement appellant should be entitled to a credit for the same.

[5] 3. Appellant requested the following charge: "If the jury believe that defendant advanced to Pallie Watson $2,600 with which to purchase the Ketchum land, and if the jury believe that she has never accounted to Watson for the same, then he is entitled to a credit for the same, whether there is any mistake in the receipt sued on or not." This charge was refused by the court, and we hold that its refusal was error. If Pallie Watson received the benefit of said $2,600 paid for the Ketchum place, she should be held to account for the same, without any reference as to whether or not there was any mistake made in omitting this item from said account. There may have been no mistake in a technical sense, for the reason that the purpose of rendering this statement, as understood by both parties thereto, did not render it necessary to include in said statement the amount paid for the Ketchum land, for which reason said amount may have been omitted from said statement, not by mistake of either party, but by consent of both.

[6] 4. Appellant requested the following charge: "If the jury believe that Pallie Watson received from defendant in money and land paid by defendant, sufficient to pay for her share in the estate of Nathan Watson, then you will find for the defendant." We think this charge should have been given, under the facts of this case, as presenting to the jury, in plain language which they could understand, the real issue herein, and that is whether or not Pallie Watson, in her lifetime, received her share of the Nathan Watson estate. The facts in this case show that Pallie Watson was the second wife of Nathan Watson, deceased, who left an estate valued at about $50,000, consisting, for the most part, of notes and cash. By agreement between Pallie Watson and the four children of Nathan Watson, she accepted one-fifth of said estate in full settlement of her interest therein, which is shown by the evidence to have been $8,469. Appellee admits payment of $2,000, purchase money of the McConnell place, which was purchased subsequent to the rendition of said account. The evidence shows that the Price place belonged to the estate of Nathan Watson, deceased, and that Pallie Watson accepted the same at the agreed value of $800, and that she purchased the Ketchum place for $2,600, and that the same was paid for by appellant. This shows that she received in lands $5,400, which would leave (supposing that her entire inter-

est in said estate was turned over to appellant) the sum of $3,069 to which she would be entitled, in addition to said three tracts of land. The jury found a verdict in her favor for $3,216.25, which is $147.25 in excess of the amount due her, including interest, and also not taking into account any money that she may have used for her own expenses during her lifetime. If she be charged with the sum of $3,518.60, which said account shows she received from appellant, then she received during her lifetime $449.60 in excess of the amount which she inherited from the estate of Nathan Watson, which could be accounted for by accumulated interest. But these facts tend strongly to show that she received, in the language of said requested charge, "sufficient to pay for her share in the estate of Nathan Watson." The facts raised this issue, and this charge should have been given. We think the evidence shows that Pallie Watson had no property, except that which she received from Nathan Watson. There is some evidence which indicates that she might have received some money during her marriage with Nathan Watson from the sale of land inherited by her, but, if so, Nathan Watson would have been entitled to possession of such money, and it was probably mingled with his own. Pallie Watson set up no claim to separate property in the partition of said estate, but accepted a one-fifth interest in same in full of all demands.

[7] 5. Appellant assigns error upon that part of the charge of the court wherein the jury are told that the instrument, dated October 24, 1890, showed that defendant then owed Pallie Watson the sum of money as therein shown, and instructing the jury to find for said sum, less credits that might be proven. Under the facts in this case we think that said instrument showed only what it purported to show, and that was that up to the date of the same appellant had received certain sums of money from Pallie Watson, amounting in the aggregate to $6,303.49, and that he had paid to her certain sums of money, amounting in the aggregate to $3,518.60. Had said account contained a balance struck, with the statement, "balance due Pallie Watson," an amount equal to the difference between the amounts stated, it might well be held as a statement that he owed her that amount of money at that time, in addition to whatever interest had accumulated on funds in his hands. But when we take into consideration the fact that he had theretofore paid for her for the Ketchum place $2,600, it might well be that he did not owe her anything at that time, and the evidence indicates such to be the fact. Appellant does not claim that he had not received the amounts of money as in said account stated, or that he had paid to Pallie Watson, up to said time, any money, other than is stated in said account; but he does claim that he had paid for her $2,600 for the Ketchum place, and if such be true he did not owe Pallie Watson, at the time said account was made out, the difference between the sums so received from her and the sums so paid her, for which reason the charge of the court was erroneous and upon the weight of the evidence. It should have been left to the jury to say whether or not appellant owed Pallie Watson anything at the time said account was made out.

[8, 9] 6. Appellant further contends that the charge referred to in the next preceding paragraph of this opinion was erroneous, for the reason that if said account was a stated account, inasmuch as it was rendered some 15 years before the institution of this suit, and some 13 years before the death of Pallie Watson, it was barred by limitation. We do not agree with appellant in this regard. Inasmuch as appellant received the money of Pallie Watson in trust for her, and the same was a continuing trust, no limitation would avail until the same was repudiated by appellant, and knowledge of such repudiation brought home to Pallie Watson. If said account had been a stated account, and had, in explicit terms, acknowledged that there was a balance in the hands of appellant belonging to Pallie Watson, limitation would not have begun to run, as is ordinarily the case with a stated account, for the reason that he was not called upon, by acknowledging said amount of money to be in his hands, to pay the same over to Pallie Watson, but, by express agreement, he was to retain the same in his hands and loan it out for her.

[10] 7. Appellant requested the court to charge, in substance, that if he had mixed and mingled the money which he had received from Pallie Watson with his own funds the same would amount to a conversion, and that limitation would run from the date of such conversion. It is true, generally speaking, that when one mixes and mingles trust funds with his own funds, so that the same cannot be distinctly traced, and knowledge of such mingling is brought home to the beneficiary, such acts on the part of the trustee would amount to a conversion, and therefore a repudiation of the trust. But not so under the facts of this case. Appellant received this money to be loaned out; he loaned the same in his own name, and at the same time was lending money of his own. If Pallie Watson knew this fact, there is no reason why she should treat the same as a repudiation of the trust. Presumably appellant would keep such account as would enable him to make proper settlement with Pallie Watson, when called on to do so. At least, the facts do not indicate any information on the part of Pallie Watson which would induce her to believe that appellant had repudiated the trust; and, in fact, appellant's defense is not that he repudiated the trust, but that he fully complied therewith, and paid over to Pallie Watson all that was coming to her.

[11-13] 8. Appellant requested the court to charge, in effect, that the amounts collected by him on the notes received by him for collection were not shown to be trust funds; and therefore that the amounts due by appellant, by reason of the collection of said notes, or any part thereof, would be barred by the four-year statute of limitation. The appellee in this case alleged that the $2,000 paid by appellant to Pallie Watson, which was so paid to her by appellant paying the purchase money for the McConnell place, was paid without any direction on the part of appellant, at the time of such payment, how the same should be applied, and stated that he elected to apply it to the amounts collected on said notes. The McConnell place was purchased and paid for within less than four years after appellant received said notes for collection. The court tried this case upon this theory. Appellant had the right, at the time of making such payment, to direct that the same should be credited, either upon funds which he held in trust to be loaned for Pallie Watson, or upon the amount collected by him on said notes. Having failed to do so, Pallie Watson had the right, at the time of such payment, to apply the same to the amount due on the notes. The evidence fails to show that either party made such application at the time of the payment. Such being the fact, ordinarily the law would apply the payment to the amount first due, which would be the money received by appellant to be loaned for Pallie Watson. It will be observed that the receipt executed by appellant for said notes did not state that appellant was to retain the money collected on said notes, and loan the same for Pallie Watson, but simply that he had received said notes for collection. Such being the fact, it was his duty to pay over the same within a reasonable time after making such collection.

[14] We think it ought to be presumed that he discharged his duty in this matter, inasmuch as there is no evidence to the contrary; and, if so, the presumption that the $2,000 payment made would apply to the elder debt would not obtain in this case. In fact, as he held the money mentioned in said account to be loaned, if it be conceded that he was not to loan the money collected on said notes, it ought not to be presumed, as against the continuing trust shown, that he did that which evidently was not contemplated by either party; that is, return to Pallie Watson, $2,000 of the money which he held for the purpose of loaning, and did not return to her the money collected on the notes, which was not to be retained and loaned by him. For which reason we think there was no error in assuming that the $2,000 was applied to the payment due on the amount collected on said notes. However, this conclusion may not be so certain as to make it a matter of law; and, if so, it would be proper to submit to the jury, upon another trial hereof, whether it was the intention of the parties to apply said $2,000 payment to the amount collected on said notes, or to the amount held by appellant to be loaned for Pallie Watson.

[15] 9. Appellant pleads laches and stale demand. He contends that, inasmuch as the money received by him from Pallie Watson was some 13 years before her death, and that, inasmuch as the last transaction shown to have occurred between them was some 10 years before her death, it ought to be conclusively presumed that he made a full settlement with her. The evidence shows that appellant and Pallie Watson were on friendly terms at all times to the date of her death; and, to our mind, it very strongly suggests that there was a full settlement between the parties many years before the death of Pallie Watson. However, we do not think that this presumption would be one of law, but it would be proper to submit these facts to the jury for their determination as to whether or not there was such settlement, especially as appellant, by reason of the death of Pallie Watson, is not permitted to testify as to such settlement, if the same occurred, and Pallie Watson being dead cannot do so, and there is probably no other positive evidence obtainable as to such settlement, if the same was made.

[16] 10. The court instructed the jury as follows: "You are instructed, gentlemen, that the plaintiff is entitled to interest at the rate of 8 per cent. per annum on the different sums of money the defendant received from Pallie Watson from the time same was received up to July 14, 1891; and on all moneys, if any, on hand at said last-named date, or collected or received thereafter, the plaintiff would be entitled to interest at the rate of 6 per cent. per annum." Appellant insists that this charge is fundamental error, and we concur in this contention. If it could be said that the evidence shows that appellant had on hand, of Pallie Watson's money, on October 24, 1890, the difference between the sums stated in the account of that date, which is $2,784.89, still he would not be chargeable with interest on said sum from that date, but only with such interest as he received on said money when loaned out by him. Under this charge, the jury found against appellant for 8 per cent. interest from said date, not only on said sum of $2,784.89, but on $3,216.25, which is the total amount of principal which they found to be due by appellant to Pallie Watson upon their entire transactions.

For the reasons hereinbefore stated, the judgment of the trial court herein is reversed, and this cause is remanded.

Reversed and remanded.